## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

2 3 SUITED, LLC,

        Plaintiff,

vs.

JIGARKUMAR PATEL a/k/a Jigar Patel;
DIPAK PATEL; LARRY PATEL; PRADIP
SANJAY PATEL a/k/a Jay Patel; UDAY
RAVAL;  LARRY  PATEL  2018
IRREVOCABLE  TRUST;  MARVELE
LLC; SIX GROOVE LLC; AND WELDON
DEVELOPMENT LLC,

        Defendants.

_____/

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff 2 3 Suited, LLC ("Plaintiff" or "2 3 Suited"), by and through its attorneys, brings this action for damages against Defendants Jigarkumar Patel a/k/a Jigar Patel ("Jigar Patel"); Dipak Patel; Larry Patel; Pradip Sanjay Patel a/k/a Jay Patel; Uday Raval; the Larry Patel 2018 Irrevocable Trust ("Larry Patel Trust"); Marvele LLC ("Marvele"); Six Groove LLC ("Six Groove"); and Weldon Development LLC ("Weldon") (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

This lawsuit arises from patently fraudulent misrepresentations made by Jigar Patel on behalf of all Defendants in connection with Defendants' sale of shares of common stock of Devi Holdings Inc. ("Devi") to Plaintiff between February and June 2021.  As described with specificity herein, Jigar Patel—while acting as Defendants' agent and Devi's Chief Executive Officer

1

("CEO")—fraudulently induced Plaintiff to purchase shares of Devi stock by deliberately concealing $13 million of undisclosed tax liability owed by Devi and making false and misleading statements regarding Devi's tax liability and overall financial condition. Jigar Patel was closely assisted in orchestrating this fraudulent scheme by Dipak Patel, a former Devi board member who had previously been banned by India's Securities and Exchange Board for conspiring with his cousins to carry out insider trading.

Relying on Defendants' fraudulent misrepresentations and omissions, Plaintiff paid over $25 million to purchase 26,166,667 shares of Devi common stock from Defendants in 2021. Now that Defendants' fraud has recently come to light, Devi's board of directors (the "Board") has estimated that the recovery for shareholders like Plaintiff that acquired Devi stock in 2021 was "ten to fifteen cents on the dollar"—a loss of over $20 million resulting from Defendants' fraudulent misrepresentations and omissions.

## PARTIES

1.      Plaintiff 2 3 Suited, LLC is a Delaware limited liability company. Leonard Tannenbaum ("Mr. Tannenbaum") is the sole member of 2 3 Suited, LLC and is a resident of Florida.

2.      Upon information and belief, Defendant Jigar Patel is a United States citizen who resides in Chandler, Arizona. Jigar Patel is the former Chief Executive Officer of Devi. On his own behalf and acting as the agent for all Defendants, Jigar Patel has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida. Among other things, Jigar Patel visited Florida and has directed communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

3.      Upon information and belief, Defendant Dipak Patel is a family member or close associate of Jigar Patel and is a resident of Fremont, California.  Through his agent Jigar Patel, Dipak Patel has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, Dipak Patel directed his agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

4.      Upon information and belief, Defendant Larry Patel is a family member or close associate of both Jigar Patel and Dipak Patel, is the beneficiary of the Larry Patel Trust, and is a resident of Missouri.  Through his agent Jigar Patel, Larry Patel has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, Larry Patel directed his agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

5.      Upon information and belief, Defendant Pradip Sanjay Patel is a family member or close associate of both Jigar Patel and Dipak Patel, is the sole member of Weldon, and is a resident of Arizona.  Through his agent Jigar Patel, Pradip Patel has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, Pradip Patel directed his agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

6.      Upon information and belief, Defendant Uday Raval is a close associate of Dipak Patel and Larry Patel and is a resident of New Jersey.  Through his agent Jigar Patel, Uday Raval

has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida. Among other things, Uday Raval directed his agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock and to pay Uday Raval a fee of $50,000.00 in connection with that purchase.

7.      Upon information and belief, the Larry Patel Trust is a trust formed in Missouri. Larry Patel is the settlor and beneficiary of the Larry Patel Trust.  Through its agent Jigar Patel, the Larry Patel Trust has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, the Larry Patel Trust directed its agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

8.      Upon information and belief, Marvele is an Arizona limited liability company with its principal place of business located at 4307 E Yellowstone Pl, Chandler, AZ 85249.  Upon information and belief, Jigar Patel is the manager and sole member of Marvele.  Through its sole member Jigar Patel, Marvele has targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, Jigar Patel visited Florida on behalf of Marvele and directed communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

9.      Upon information and belief, Six Groove is an Arizona limited liability company with its principal place of business located at 4307 E Yellowstone Pl, Chandler, AZ 85249.  Upon information and belief, Jigar Patel is the manager and sole member of Six Groove.  Through its

sole member Jigar Patel, Six Groove has targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida. Among other things, Jigar Patel visited Florida on behalf of Six Groove and directed communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

10.     Upon information and belief, Weldon is an Arizona limited liability company with its principal place of business located at 9780 N Camino Del Plata, Tucson, AZ 85742.  Upon information and belief, Pradip Patel is Weldon's sole member.  Through its agent Jigar Patel, Weldon has targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida. Among other things, Weldon directed its agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

## **RELATED PARTIES**

11.     Devi is a Delaware corporation with its principal place of business in Arizona.  Devi is a licensed cultivator and retailer of both medical and adult-use cannabis whose operations include cultivation, extraction and processing, and retail products and dispensaries.  Defendants sold 2 3 Suited shares of Devi common stock in four separate transactions on February 11, 2021; February 12, 2021; June 25, 2021; and June 25, 2021.

## **JURISDICTION AND VENUE**

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this is a civil action brought pursuant to a federal statute, and the Court may exercise supplemental jurisdiction over 2 3 Suited's state law claims pursuant to 28 U.S.C. § 1367.

13.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of Delaware and Florida, on the one hand, and citizens of Arizona, California, Missouri, and New Jersey on the other, and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.

14.     This Court has personal jurisdiction over all Defendants because this action arises out of their individual and collective actions targeting 2 3 Suited and its sole member who resides in Florida in pursuit of their fraudulent stock sale scheme.  More specifically, this Court has jurisdiction over all Defendants under section 48.193(1)(a)(6), Florida Statutes because they all caused injury to a person within Florida arising out of Defendants' solicitation activities within this state, namely to 2 3 Suited and its sole member Mr. Tannenbaum.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**FACTS**

16.     Mr. Tannenbaum is a Florida resident and macro investor who has underwritten almost $10 billion of loans and taken four entities public.

17.     In 2020, Mr. Tannenbaum founded AFC Gamma, Inc. ("AFC Gamma"), a publicly traded institutional lender that originates, structures, and underwrites loans secured by commercial real estate.  AFC Gamma also specializes in loans to state-licensed cannabis operators.

18.     That same year, Mr. Tannenbaum was introduced to Jigar Patel.  Jigar Patel is a founder of Devi and was the CEO and a director of Devi at the time he met Mr. Tannenbaum.

19.     During the spring of 2020, AFC Gamma and Devi began negotiating a Credit Agreement, through which AFC Gamma would agree to provide Devi a series of loans.  The first loan was made on May 8, 2020 for $42.5 million.  On May 15, 2020, Devi and AFC Gamma

finalized and entered into the Credit Agreement.  Jigar Patel signed the Credit Agreement on behalf of Devi as CEO and President.   Under the Credit Agreement, Devi was required to provide quarterly Compliance Certificates certifying, *inter alia*, that all of Devi's applicable taxes had been paid when due and payable.

20.     In late 2020, Jigar Patel approached Mr. Tannenbaum to gauge his interest in also purchasing Devi common stock from early investors—on information and belief, members of Jigar Patel's family or close associates—who were looking to sell their shares.  Specifically, Jigar Patel stated that his family member or associate Larry Patel was selling 15,000,000 shares of Devi stock held by the Larry Patel Trust, and that his family member or associate Pradip Patel was selling 6,000,000 shares of Devi stock held by Weldon.

21.     Jigar Patel represented to Mr. Tannenbaum that he was the agent authorized to speak and act on behalf of those sellers—Larry Patel, the Larry Patel Trust, Pradip Patel, and Weldon.  Further to this role, Jigar Patel orchestrated every step of the sale process, transmitting communications back and forth between these sellers and Mr. Tannenbaum in Florida, and delivering documents back and forth between the sellers and Mr. Tannenbaum in Florida.

22.     Jigar Patel was closely assisted in these transactions by both Dipak Patel and Uday Raval.  Dipak Patel is a former Devi board member with intimate knowledge of the inner workings and financial condition of the company.  During his time as a portfolio manager for an Indian company called Passport India Investment (Mauritius) Limited, Dipak Patel was banned for five years by India's SEC for passing on insider trading information to his cousins—*i.e.*, helping his family members defraud investors.  Dipak Patel and his associate Uday Raval served as go-betweens for the transactions at issue, passing information and documents back and forth between Larry Patel and Jigar Patel.  On information and belief, Larry Patel requested Dipak Patel and

Uday Raval to serve as his intermediaries with Jigar Patel to try to insulate himself from liability, given his knowledge of Jigar Patel's misrepresentations in connection with the transactions.  Mr. Raval, who on information and belief was similarly aware of Jigar Patel's misrepresentations and Larry Patel's knowledge thereof, demanded and received a $50,000.00 fee for his role in facilitating the fraudulent transaction.

23.     At the time of the transactions, Jigar Patel and Mr. Tannenbaum routinely spoke four to five times a week, if not daily, about Devi's financial condition.  In these communications, as more specifically detailed below, Jigar Patel made knowing, material misrepresentations regarding Devi's financial condition and tax liabilities to Mr. Tannenbaum at his family members' or associates' direction to induce Mr. Tannenbaum to purchase his family members' or associates' shares.

24.     For example, on November 18, 2020, Mr. Patel delivered a "Q3 Board Meeting" PowerPoint to Mr. Tannenbaum that provided a financial summary for Devi, including forecast modeling and a balance sheet.  Although the forecast modeling provided by Jigar Patel included categories for "accrued liabilities" and "deferred income tax," it failed to disclose approximately $8 million in tax liabilities that were then due and unpaid by the company.  Jigar Patel, as Devi's CEO, was aware of these undisclosed tax liabilities and intentionally omitted them from the information provided to Mr. Tannenbaum.  Dipak Patel was also aware of these undisclosed tax liabilities, given his inside knowledge of Devi's financial condition and his close communications and relationship with Jigar Patel.  On information and belief, the sellers—Larry Patel, his agent Uday Raval, the Larry Patel Trust, Pradip Patel, and Weldon—were also aware of these unpaid tax liabilities, which was their motivation for dumping their shares.  For example, prior to entering into the transactions, Larry Patel insisted to Mr. Raval that the agreements be structured in a way

that would release him from all liability.

25.     On December 1, 2020, Jigar Patel prepared and delivered a Compliance Certificate under the Credit Agreement to Mr. Tannenbaum falsely certifying that all of Devi's outstanding taxes had been paid, when in reality, Devi owed approximately $8 million in unpaid taxes at that time.

26.     On January 14, 2021, Jigar Patel asked Mr. Tannenbaum to call him regarding his family members' or associates' offer to sell their shares.  On that call, Mr. Tannenbaum asked Jigar Patel why his family members or associates wanted to sell and if there were any financial problems with Devi of which he should be aware.  Jigar Patel responded that there were no problems, that Devi's financials were healthy, and that the shares had a value of approximately $1.50 a share.  Again, on that call, Jigar Patel failed to disclose his and his family members' or associates' knowledge of Devi's unpaid tax liabilities and dire financial condition.

27.     Jigar Patel and Mr. Tannenbaum had similar calls to discuss the stock sales, including on January 25 and February 9, 2021.  On each of these calls, Mr. Patel made similar representations and omissions regarding Devi's financial condition and unpaid tax liabilities.

28.     Relying on these representations and omissions, Mr. Tannenbaum offered to buy the common stock shares through 2 3 Suited at approximately $.90 to $1.00 a share.  Because Devi did not have enough cash to cover the unpaid tax liabilities at the time of the investments, Defendants' misrepresentations and omissions regarding Devi's unpaid tax liabilities was material and significant—Mr. Tannenbaum and 2 3 Suited would have never purchased Defendants' shares had they known about Devi's financial condition and unpaid tax liabilities.

29.     On February 11, 2021, 2 3 Suited purchased 6,000,000 shares of Devi common stock for $5,400,000.00—$.90 a share—from Defendant Weldon.  Pradip Patel personally signed

the stock purchase agreement on behalf of Weldon.  In addition to serving as Defendant Weldon's agent in finalizing the transaction, including by negotiating the terms of sale and transmitting the deal documents between Defendants and Mr. Tannenbaum, Jigar Patel also entered into a personal guarantee with Pradip Patel, guaranteeing the sale of Defendant Weldon's shares for $1.00 a share. Under the guarantee, Jigar Patel was obligated to make up the difference between the shares' sale price and $1.00 a share.  In the event the shares had not sold, Jigar Patel would have been obligated to purchase the shares for $1.00 with a closing on December 31, 2021.

30.     On February 12, 2021, 2 3 Suited purchased 15,000,000 shares of Devi common stock for $15,000,000.00—$1.00 a share—from the Larry Patel Trust.  Larry Patel personally signed a term sheet memorializing the terms of the sale.  Jigar Patel continued to serve as Defendants' agent in finalizing these transactions, including by negotiating the terms of sale and transmitting the deal documents between Defendants and Mr. Tannenbaum.

31.     In the spring of 2021, Jigar Patel again approached Mr. Tannenbaum about purchasing additional shares of Devi common stock, this time shares he personally owned through his other companies, Marvele and Six Groove.  To induce Mr. Tannenbaum to purchase these shares, Jigar Patel again made multiple knowing misrepresentations and fraudulent omissions to Mr. Tannenbaum regarding Devi's unpaid tax liabilities and overall financial condition.

32.     Specifically, on March 23, 2021, Mr. Tannenbaum asked Jigar Patel in a text message: "Is there anything in accounting that's an issue?"  Jigar Patel responded: "I don't think so."  As the CEO of Devi at the time with knowledge of millions of dollars in unpaid tax liabilities that did not appear on Devi's books, that was a fraudulent misrepresentation and/or omission.

33.     Then, on March 31, 2021, Jigar Patel sent Mr. Tannenbaum another Compliance Certificate under the Credit Agreement falsely certifying that all of Devi's outstanding taxes had

been paid, when in reality, Jigar Patel was aware that Devi owed approximately $8 million in unpaid taxes for 2020 and millions more in unpaid taxes for 2021 at that time.

34.     Similarly, on May 12, 2021, Jigar Patel prepared and sent to Mr. Tannenbaum an Investor Presentation that valued Devi's shares at $1.50/share, included a financial statement and valuation of Devi, but failed to disclose Devi's unpaid tax liabilities for 2020 and 2021 that totaled approximately $13 million at that time.

35.     On May 22, 2021, Mr. Tannenbaum sent Jigar Patel a text message expressing doubt about purchasing his shares, again asking "why everyone is selling."  Jigar Patel reassured Mr. Tannenbaum that Devi's financials were sound, omitting the true reason for his stock sale: Devi's precarious financial condition and the approximately $13 million in undisclosed tax liability owed by Devi.

36.     On May 27, 2021, Jigar Patel sent a Company Operational Review Board presentation via email to Mr. Tannenbaum in which he again included a financial statement and valuation of Devi that intentionally omitted Devi's approximately $13 million in unpaid tax liability.

37.     As a result of Jigar Patel's fraudulent misrepresentations and omissions, on June 25, 2021, 2 3 Suited purchased 2,666,667 shares of Devi common stock from Defendant Six Groove for $2,826,667.02—at $1.06 a share—and 2,500,000 shares of Devi common stock from Defendant Marvele for $2,650,000—at $1.06 a share.  Jigar Patel signed the stock purchase agreements on behalf of both Six Groove and Marvele as the "Manager" of those companies.

38.     In total, 2 3 Suited purchased 26,166,667 shares of Devi stock for $25.9 million from Defendants Larry Patel Trust, Weldon, Marvele, and Six Groove.  Had 2 3 Suited known about the $13 million in undisclosed tax liabilities owed by Devi, none of these purchases would

have been consummated.

39.     Over the course of the following year, Jigar Patel took further affirmative steps to conceal Devi's unpaid tax liabilities and prevent them from coming to light.  Specifically, he delayed Devi's 2020 financial audits from being completed until November 2021, and delayed Devis' 2021 financial audit indefinitely—it still has not been completed.  For example, Jigar Patel withheld journal entries regarding taxes and other accounting and record-keeping information that was necessary for Devi's auditor, Cohn Reznick, to complete the 2021 audit throughout the entire 2022 fiscal year.  When Mr. Tannenbaum pushed Jigar Patel on the status of the financial audits, Jigar Patel would consistently lie, say that there were no issues, and that the audit was forthcoming.

40.     After the 2020 audit came back, Jigar Patel fired Devi's Chief Financial Officer, Susan Sweeney, falsely blaming her for the audit delays.  On information and belief, Dipak Patel knew about and participated in this decision.

41.     Throughout the remainder of 2021 and into 2022, Jigar Patel failed to provide Mr. Tannenbaum and the Board with accurate, up to date information regarding Devi's finances or operations.

42.     On information and belief, Jigar Patel delayed Devi's audit and withheld information from Mr. Tannenbaum and the Board not only to conceal the $13 million in unpaid tax liabilities he had intentionally concealed in connection with Defendants' sales of Devi stock, but also to conceal his gross mismanagement and fraudulent accounting at Devi.

43.     For example, on information and belief, Jigar Patel was directing intercompany sales of cannabis product from a Devi cultivation facility to a Devi dispensary to be booked to revenue for the cultivation on Devi's books as if they were high-margin, external sales, even though the product was never sold to any end user.  Instead, the product was old and contaminated

and was left to rot in a storage facility, but was never reconciled on Devi's books as a loss.  These artificial sales that did not bring in any revenue to Devi are just one of the many reasons that Devi's financial statements were inflated, why Devi did not have enough cash to pay its taxes, and why Jigar Patel intentionally delayed audits and concealed information from the Board and Mr. Tannenbaum.  On information and belief, all Defendants knew about these shady accounting practices and operations, which is why all of these Defendants wanted to dump their shares in 2021.

44.     Jigar Patel concealed further mismanagement issues from Mr. Tannenbaum and the Board, such as the fact that the vast majority of the cannabis products grown at Devi's Arizona facilities turned out to be unsellable, leaving Devi with the expense of growth with low revenue, and that there was a fire at one of Devi's properties that Jigar Patel never disclosed.  Jigar Patel also used Devi funds to fund other companies he had an interest in, and issued off-book loans from Devi to companies he had an interest in, without accounting for those transactions in Devi's books and records.  On information and belief, Dipak Patel knew about all of—and the remaining Defendants knew about some if not all of—these irregularities obfuscating the true state of Devi's financial condition.

45.     Jigar Patel's misconduct only started to come to light after he resigned as Devi's CEO in October 2022 and the new members of company staff began reviewing the company's books and records containing the financial information that Jigar Patel had previously (and fraudulently) concealed.

46.     While the full extent of Jigar Patel's malfeasance and fraud at Devi is still being uncovered, the Board and Mr. Tannenbaum learned the extent of his false representations and omissions about Devi's unpaid tax liabilities at a March 2, 2023 Board Meeting at which it was

revealed that Jigar Patel had concealed the $13 million in unpaid 2020 and 2021 taxes.

47.     At a May 17, 2023 shareholder meeting, the Board estimated that, as a result of these undisclosed liabilities and Jigar Patel's mismanagement of Devi, the recovery for shareholders like Plaintiff that acquired Devi stock in 2021 was "ten to fifteen cents on the dollar"—a loss of over $20 million resulting from Defendants' fraud.

48.     All conditions precedent to the filing of this lawsuit have occurred or have otherwise been waived or excused.

49.     As a result of Defendants' fraudulent conduct, 2 3 Suited was obligated to engage the services of the undersigned law firm and has thus been forced to incur attorneys' fees and costs.

## COUNT I
### VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5, 15 U.S.C. § 78j(b) AND 17 C.F.R. § 240.10b-5
### (against all Defendants)

50.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 49 as if fully restated herein.

51.     This claim is brought under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against all Defendants.

52.     The Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiffs in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.     As set forth above, Defendants knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock they owned at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its

detriment in purchasing the now nearly worthless stock. But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

54.     Specifically, Jigar Patel and Dipak Patel, acting at the direction and as the agents of Pradip Patel and Weldon, made the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Defendant Weldon.

55.     Jigar Patel, Dipak Patel, and Uday Raval, acting at the direction and as the agents of Larry Patel and the Larry Patel Trust, made the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00 at $1.00 a share from the Larry Patel Trust.

56.     Jigar Patel, acting on his own behalf and on behalf of Six Groove, made the misrepresentations and omissions detailed above in Paragraphs 31-36  in order to induce 2 3 Suited to purchase 2,666,667 shares of Devi common stock for $2,826,667.02 at $1.06 a share from Six Groove.

57.     Jigar Patel, acting on his own behalf and on behalf of Marvele, made the misrepresentations and omissions detailed above in Paragraphs 31-36 in order to induce 2 3 Suited to purchase 2,500,000 shares of Devi common stock for $2,650,000 at $1.06 a share from Defendant Marvele.

58.     These misrepresentations and omissions were material to 2 3 Suited and induced 2 3 Suited to purchase Devi's stock.

59.     Defendants' misrepresentations and omissions were made in connection with the purchase of securities, and 2 3 Suited invested money in Devi stock with the expectation of future profits generated by Devi.

60.     Defendants knew that their misrepresentations and omissions made to solicit 2 3 Suited's funds were materially false and misleading.

61.     Had 2 3 Suited known that Defendants' representations were false and misleading, 2 3 Suited would not have purchased shares of Devi.

62.     As a direct and proximate result of Defendants' fraudulent conduct, as alleged herein, 2 3 Suited has suffered economic damages in an amount to be established at trial.

## COUNT II
## VIOLATION OF FLORIDA SECURITIES AND INVESTOR PROTECTION ACT
### (against all Defendants)

63.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 49 as if fully restated herein.

64.     The investments made by 2 3 Suited were "securities" as defined by the Florida Securities and Investor Protection Act, Section 517.301, Florida Statutes, *et seq.* (the "Florida Act").

65.     Section 517.301 makes it unlawful for a person, in connection with the offer, sale, or purchase of any investment or security, directly or indirectly:

   a.   To employ any device, scheme, or artifice to defraud;

   b.   To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading; or

   c.   To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

66.     As alleged, Defendants violated the Florida Act by, among other things: (i) employing a device, scheme or artifice to defraud; (ii) making untrue statements of material facts

and omitting to state material facts that would render the statements misleading in light of the circumstances under which they are made; (iii) engaging in an act, practice, or course of business which operates or would operate as a fraud or deceit upon a person; and (iv) knowingly and willfully falsifying, concealing, or covering up, by any trick, scheme, or device, a material fact, making any false, fictitious, or fraudulent statement or representation, or making or using any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

67.     As set forth above, Defendants knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock they owned at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock.  But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

68.     Specifically, Jigar Patel and Dipak Patel, acting at the direction and as the agents of Pradip Patel and Weldon, made the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Defendant Weldon.

69.     Jigar Patel, Dipak Patel, and Uday Raval, acting at the direction and as the agents of Larry Patel and the Larry Patel Trust, made the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00 at $1.00 a share from the Larry Patel Trust.

70.     Jigar Patel, acting on his own behalf and on behalf of Six Groove, made the misrepresentations and omissions detailed above in Paragraphs 31-36 in order to induce 2 3 Suited

to purchase 2,666,667 shares of Devi common stock for $2,826,667.02 at $1.06 a share from Six Groove.

71.     Jigar Patel, acting on his own behalf and on behalf of Marvele, made the misrepresentations and omissions detailed above in Paragraphs 31-36 in order to induce 2 3 Suited to purchase 2,500,000 shares of Devi common stock for $2,650,000 at $1.06 a share from Defendant Marvele.

72.     The Florida Act provides for civil liability for these violations:

Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Fla. Stat. § 517.211.

73.     2 3 Suited is a "person . . . purchasing the security" from Defendants, and each Defendant constitutes either a person selling the security, or a director, officer, or agent of the seller who personally participated or aided in making the sale.

74.     Defendants have directly sold securities to 2 3 Suited or have aided in making the sale of securities as a director, officer, partner, or agent of the seller for such securities.

75.     Pursuant to the Florida Act, Defendants are jointly and severally liable to 2 3 Suited as sellers of the securities.

76.     2 3 Suited has been, and continues to be, directly and indirectly injured and damaged, as a proximate result of Defendants' schemes, acts, practices, and courses of business which operated to deceive 2 3 Suited relative to the investments in question, and have suffered financial losses in an amount to be proven at trial.

## <u>COUNT III</u>
## COMMON LAW FRAUDULENT INDUCEMENT
### (against all Defendants)

77.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 49 as if fully restated herein.

78.     As set forth above, Defendants knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock they owned at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock.  But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

79.     Specifically, Jigar Patel and Dipak Patel, acting at the direction and as the agents of Pradip Patel and Weldon, made the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Defendant Weldon.

80.     Jigar Patel, Dipak Patel, and Uday Raval, acting at the direction and as the agent of Larry Patel and the Larry Patel Trust, made the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00 at $1.00 a share from the Larry Patel Trust.

81.     Jigar Patel, acting on his own behalf and on behalf of Six Groove, made the misrepresentations and omissions detailed above in Paragraphs 31-36 in order to induce 2 3 Suited to purchase 2,666,667 shares of Devi common stock for $2,826,667.02 at $1.06 a share from Six Groove.

82.     Jigar Patel, acting on his own behalf and on behalf of Marvele, made the misrepresentations and omissions detailed above in Paragraphs 31-36 in order to induce 2 3 Suited

to purchase 2,500,000 shares of Devi common stock for $2,650,000 at $1.06 a share from Defendant Marvele.

83.     These statements of fact and omissions were material and Defendants knew them to be false when they were made.

84.     Defendants made these false statements with the intention that 2 3 Suited would be induced to act on them, including by purchasing Devi stocks.

85.     In making these misrepresentations, Jigar Patel acted as agent for Defendants Dipak Patel, Uday Raval, Larry Patel, Larry Patel Trust, Pradip Patel, Weldon, Marvele, and Six Groove.

86.     2 3 Suited justifiably relied on Jigar Patel's misrepresentations to its detriment when it purchased Devi stock from Defendants.

87.     As a direct and proximate result of Defendants' fraudulent conduct, 2 3 Suited suffered damages.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### (against all Defendants)

88.     2 3 Suited repeats and realleges ach of the allegations in paragraphs 1 through 49 as if fully restated herein.

89.     In the alternative, as set forth above, Defendants made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 that they knew or should have known to be false to induce 2 3 Suited to purchase Devi common stock they owned at artificially inflated prices, and 2 3 Suited relied on those misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock.  But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

90.     Specifically, Jigar Patel and Dipak Patel, acting at the direction and as the agents of Pradip Patel and Weldon, made the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Defendant Weldon.  Jigar Patel, Dipak Patel, Pradip Patel, and Weldon knew or should have known these misrepresentations and omissions were false, or recklessly disregarded their falsity.

91.     Jigar Patel, Dipak Patel, and Uday Raval, acting at the direction and as the agent of Larry Patel and the Larry Patel Trust, made the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00 at $1.00 a share from the Larry Patel Trust.  Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust knew or should have known these misrepresentations and omissions were false, or recklessly disregarded their falsity.

92.     Jigar Patel, acting on his own behalf and on behalf of Six Groove, made the misrepresentations and omissions detailed above in Paragraphs 31-36 in order to induce 2 3 Suited to purchase 2,666,667 shares of Devi common stock for $2,826,667.02 at $1.06 a share from Six Groove.  Jigar Patel knew or should have known these misrepresentations and omissions were false, or recklessly disregarded their falsity.

93.     Jigar Patel, acting on his own behalf and on behalf of Marvele, made the misrepresentations and omissions detailed above in Paragraphs 31-36 in order to induce 2 3 Suited to purchase 2,500,000 shares of Devi common stock for $2,650,000 at $1.06 a share from Defendant Marvele.  Jigar Patel knew or should have known these misrepresentations and omissions were false, or recklessly disregarded their falsity.

94.     Defendants made these false statements with the intention that 2 3 Suited would be

induced to act on them, including by purchasing Devi stock.

95.     In making these misrepresentations, Jigar Patel acted as agent for Defendants Dipak Patel, Uday Raval, Larry Patel, Larry Patel Trust, Pradip Patel, Weldon, Marvele, and Six Groove.

96.     2 3 Suited justifiably relied on Jigar Patel's misrepresentations to its detriment when it purchased Devi stock from Defendants.

97.     As a direct and proximate result of Defendants' negligent conduct, 2 3 Suited suffered damages.

**COUNT V**
**CIVIL CONSPIRACY**
**(against all Defendants)**

98.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 49 as if fully restated herein.

99.     When Defendants learned of Devi's poor financial condition and unpaid tax liabilities from Jigar Patel in or around late 2020, they entered into a conspiracy to defraud 2 3 Suited and sell their shares at artificially inflated prices in 2021.

100.    Each of Jigar Patel, Dipak Patel, Uday Raval, Pradip Patel, Weldon, Larry Patel, the Larry Patel Trust, Six Groove, and Marvele overtly acted in pursuance of this conspiracy.

101.    Jigar Patel and Dipak Patel made the misrepresentations and omissions detailed above in Paragraphs 23-28 and 31-36 in order to induce 2 3 Suited to purchase shares of Devi.

102.    Pradip Patel and Weldon directed Jigar Patel to make the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Defendant Weldon. Additionally, on February 11, 2021, Weldon sold its shares of Devi common stock at an inflated price to 2 3 Suited.  Pradip Patel personally signed the stock purchase agreement on behalf of

Weldon.

103.    Larry Patel, Dipak Patel, Uday Raval, and the Larry Patel Trust directed Jigar Patel to make the misrepresentations and omissions detailed above in Paragraphs 23-28 in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00 at $1.00 a share from the Larry Patel Trust. Additionally, on February 12, 2021, the Larry Patel Trust sold its shares of Devi common stock at an inflated price to 2 3 Suited.  Larry Patel personally signed a term sheet memorializing the terms of the sale.

104.    Six Groove directed Jigar Patel to make the misrepresentations and omissions detailed above in Paragraphs 31-36 in order to induce 2 3 Suited to purchase 2,666,667 shares of Devi common stock for $2,826,667.02 at $1.06 a share from Six Groove.  Additionally, on June 25, 2021, Six Groove sold its shares of Devi common stock at an inflated price to 2 3 Suited.

105.    Marvele directed Jigar Patel to make the misrepresentations and omissions detailed above in Paragraphs 31-36 in order to induce 2 3 Suited to purchase 2,500,000 shares of Devi common stock for $2,650,000 at $1.06 a share from Defendant Marvele.  Additionally, on June 25, 2021, Marvele sold its shares of Devi common stock at an inflated price to 2 3 Suited.

106.    As a direct and proximate result of these overt acts taken in furtherance of the conspiracy, 2 3 Suited suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff 2 3 Suited demands judgment against all Defendants for compensatory damages, rescission of the stock purchases, punitive damages, attorneys' fees, costs, prejudgment interest, post-judgment interest, and for such further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  November 17, 2023

Respectfully submitted,

/s/ *Mark A. Salky*
_____
MARK A. SALKY
Florida Bar No. 058221
Mark.Salky@gtlaw.com
JAMES E GILLENWATER
Florida Bar No. 1013518
gillenwaterj@gtlaw.com
JESSICA JOHNSON FISHFELD
Florida Bar No. 1018904
Jessica.Fishfeld@gtlaw.com
EMILEY PAGRABS
Florida Bar No. 1030834
pagrabse@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 Southeast Second Avenue, Suite 4400
Miami, Florida 33131
Telephone:  305.579.0500
Facsimile:  305.579.0717