### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:23-CV-81503-MIDDLEBROOKS/MATTHEWMAN

2 3 SUITED, LLC,

               Plaintiff,

vs.

JIGARKUMAR PATEL a/k/a Jigar Patel;
DIPAK PATEL; LARRY PATEL; PRADIP
SANJAY PATEL a/k/a Jay Patel; UDAY
RAVAL;     LARRY     PATEL     2018
IRREVOCABLE    TRUST;    MARVELE
LLC; SIX GROOVE LLC; AND WELDON
DEVELOPMENT LLC,

               Defendants.

_____/

### AMENDED COMPLAINT

Plaintiff 2 3 Suited, LLC ("Plaintiff" or "2 3 Suited"), by and through its attorneys, brings

this securities fraud action for rescission against Defendants Jigarkumar Patel a/k/a Jigar Patel

("Jigar Patel"); Dipak Patel; Larry Patel; Pradip Sanjay Patel a/k/a Jay Patel; Uday Raval; Weldon

Development LLC ("Weldon"); the Larry Patel 2018 Irrevocable Trust ("Larry Patel Trust");

Marvele LLC ("Marvele"); and Six Groove LLC ("Six Groove") (collectively, "Defendants"), and

alleges as follows:

### PRELIMINARY STATEMENT

This lawsuit arises from patently fraudulent misrepresentations made by Jigar Patel on

behalf of all Defendants in connection with Defendants' sale of shares of common stock of Devi

Holdings Inc. ("Devi") to Plaintiff between February and June 2021.  As described with specificity

herein, Jigar Patel—while acting as Defendants' agent and Devi's Chief Executive Officer

("CEO")—fraudulently induced Plaintiff to purchase shares of Devi stock by affirmatively misrepresenting that all of Devi's taxes had been paid despite his and Defendants' knowledge that Devi had $13 million of undisclosed tax liability and making false and misleading statements regarding Devi's overall financial condition.  Jigar Patel was closely assisted in orchestrating this fraudulent scheme by Dipak Patel, a former Devi board member who had previously been banned by India's Securities and Exchange Board for conspiring with his cousins to carry out insider trading.

Relying on Defendants' fraudulent misrepresentations, Plaintiff paid over $25 million to purchase 26,166,667 shares of Devi common stock from Defendants in 2021.  Now that Defendants' fraud has recently come to light, Devi's board of directors (the "Board") has estimated that Devi's stock—which Plaintiff still possesses and on which Plaintiff has received no income—is essentially worthless.  Confirming this, a receiver has been appointed for Devi due to its precarious financial condition, and the receiver recently bought warrants to purchase millions of shares of Devi common stock for just $100.  Plaintiff seeks to rescind Defendants' unlawful stock sales to recover its loss of over $25 million plus interest resulting from Defendants' fraudulent misrepresentations.

## **PARTIES**

1.      Plaintiff 2 3 Suited, LLC is a Delaware limited liability company.  Leonard Tannenbaum ("Mr. Tannenbaum") is the sole member of 2 3 Suited, LLC and is a resident of Florida.

2.      Upon information and belief, Defendant Jigar Patel is a United States citizen who resides in Chandler, Arizona.  Jigar Patel is the former Chief Executive Officer of Devi.  On his own behalf and acting as the agent for all Defendants, Jigar Patel has intentionally targeted and

solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, Jigar Patel visited Florida and has directed communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

3.      Upon information and belief, Defendant Dipak Patel is a family member or close associate of Jigar Patel and is a resident of Fremont, California.  Through his agent Jigar Patel, Dipak Patel has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, Dipak Patel directed his agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

4.      Upon information and belief, Defendant Larry Patel is a family member or close associate of both Jigar Patel and Dipak Patel, is the beneficiary of the Larry Patel Trust, and is a resident of Missouri.  Through his agent Jigar Patel, Larry Patel has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, Larry Patel directed his agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

5.      Upon information and belief, Defendant Pradip Sanjay Patel ("Pradip" or "Jay") is a family member or close associate of both Jigar Patel and Dipak Patel, is the sole member of Weldon, and is a resident of Arizona.  Through his agent Jigar Patel, Pradip Patel has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, Pradip Patel directed his agent Jigar Patel to visit Florida and to direct communications

through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

6. Upon information and belief, Defendant Uday Raval is a close associate of Dipak Patel and Larry Patel and is a resident of New Jersey. Through his agent Jigar Patel, Uday Raval has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida. Among other things, Uday Raval directed his agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock and to pay Uday Raval a fee of $50,000.00 in connection with that purchase.

7. Upon information and belief, Weldon is an Arizona limited liability company with its principal place of business located at 9780 N Camino Del Plata, Tucson, AZ 85742. Upon information and belief, Pradip Patel is Weldon's sole member. Through its agent Jigar Patel, Weldon has targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida. Among other things, Weldon directed its agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

8. Upon information and belief, the Larry Patel Trust is a trust formed in Missouri. Larry Patel is the settlor and beneficiary of the Larry Patel Trust. Through its agent Jigar Patel, the Larry Patel Trust has intentionally targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida. Among other things, the Larry Patel Trust directed its agent Jigar Patel to visit Florida and to direct communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of

soliciting purchasers of Devi stock.

9.      Upon information and belief, Marvele is an Arizona limited liability company with its principal place of business located at 4307 E Yellowstone Pl, Chandler, AZ 85249.  Upon information and belief, Jigar Patel is the manager and sole member of Marvele.  Through its sole member Jigar Patel, Marvele has targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida.  Among other things, Jigar Patel visited Florida on behalf of Marvele and directed communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

10.     Upon information and belief, Six Groove is an Arizona limited liability company with its principal place of business located at 4307 E Yellowstone Pl, Chandler, AZ 85249.  Upon information and belief, Jigar Patel is the manager and sole member of Six Groove.  Through its sole member Jigar Patel, Six Groove has targeted and solicited purchasers of Devi's stock, including Plaintiff, in Florida. Among other things, Jigar Patel visited Florida on behalf of Six Groove and directed communications through electronic messaging, phone calls, and Zoom/virtual meetings to residents in the State of Florida, including Plaintiff, for the purpose of soliciting purchasers of Devi stock.

## **RELATED PARTIES**

11.     Devi is a Delaware corporation with its principal place of business in Arizona.  Devi is a licensed cultivator and retailer of both medical and adult-use cannabis whose operations include cultivation, extraction and processing, and retail products and dispensaries.  Defendants sold 2 3 Suited shares of Devi common stock in four separate transactions on February 11, 2021; February 12, 2021; June 25, 2021; and June 25, 2021.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this is a civil action brought pursuant to a federal statute, and the Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of Delaware and Florida, on the one hand, and citizens of Arizona, California, Missouri, and New Jersey on the other, and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.

14.     This Court has personal jurisdiction over all Defendants because they are all residents of the United States and thus subject to personal jurisdiction under the nationwide service provision of 15 U.S.C. § 78aa.  The Court also has personal jurisdiction over all Defendants under section 48.193(1)(a)(6), Florida Statutes, because Defendants individually and collectively caused injury to a person within Florida arising out of Defendants' fraudulent stock solicitation activities within this state, namely to 2 3 Suited and its sole member Mr. Tannenbaum, who resides in Florida.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

16.     Mr. Tannenbaum is a Florida resident and macro investor who has underwritten almost $10 billion of loans and taken four entities public.

17.     In 2020, Mr. Tannenbaum founded AFC Gamma, Inc. ("AFC Gamma"), a publicly traded institutional lender that originates, structures, and underwrites loans secured by commercial real estate.  AFC Gamma also specializes in loans to state-licensed cannabis operators.

18.     That same year, Mr. Tannenbaum was introduced to Jigar Patel.  Jigar Patel is a founder of Devi and was the CEO and a director of Devi at the time he met Mr. Tannenbaum.

19.     During the spring of 2020, AFC Gamma and Devi began negotiating a Credit Agreement, through which AFC Gamma would agree to provide Devi a series of loans.  The first loan was made on May 8, 2020 for $42.5 million.  On May 15, 2020, Devi and AFC Gamma finalized and entered into the Credit Agreement.  Jigar Patel signed the Credit Agreement on behalf of Devi as CEO and President.   Under the Credit Agreement, Devi was required to provide quarterly Compliance Certificates affirmatively certifying, *inter alia*, whether all of Devi's applicable taxes had been paid when due and payable.

20.     In late 2020, Jigar Patel approached Mr. Tannenbaum to gauge his interest in also purchasing Devi common stock from early investors who were looking to sell their shares.  Specifically, Jigar Patel stated that Larry Patel was selling 15,000,000 shares of Devi stock held by the Larry Patel Trust, and that Pradip Patel was selling 6,000,000 shares of Devi stock held by Weldon.  Prior to the sales, Mr. Tannenbaum asked Jigar Patel if he had any personal relationship with the sellers.  Jigar Patel responded that he did not.  This representation was false—given that Larry Patel and Pradip Patel turned out to be Jigar Patel's family members and/or close associates, and Jigar Patel even had a personal guarantee with Pradip Patel guaranteeing the sale of Weldon's shares.

21.     However, Jigar Patel represented to Mr. Tannenbaum that he was the agent authorized to speak and act on behalf of those sellers—Larry Patel, the Larry Patel Trust, Pradip Patel, and Weldon—and that these sellers acknowledged he would act for them.  Further to this role, the sellers controlled Jigar Patel and Jigar Patel orchestrated every step of the sale process at their instruction, transmitting communications back and forth between the sellers and Mr.

Tannenbaum in Florida, and delivering documents back and forth between the sellers and Mr. Tannenbaum in Florida.  That Jigar Patel was able to procure and deliver signed documents from the sellers was prima facie evidence of the agency relationship.

22.     Jigar Patel was closely assisted in these transactions by both Dipak Patel and Uday Raval.  Dipak Patel is a former Devi board member with intimate knowledge of the inner workings and financial condition of the company.  During his time as a portfolio manager for an Indian company called Passport India Investment (Mauritius) Limited, Dipak Patel was banned for five years by India's SEC for passing on insider trading information to his cousins—*i.e.*, helping his family members defraud investors.  Dipak Patel and his associate Uday Raval served as go-betweens for the transactions at issue, passing information and documents back and forth between Larry Patel and Jigar Patel.  Larry Patel requested Dipak Patel and Uday Raval to serve as his intermediaries with Jigar Patel to attempt to insulate himself from liability, given his knowledge of Jigar Patel's misrepresentations in connection with the transactions.  Mr. Raval, who on information and belief was similarly aware of Jigar Patel's misrepresentations and Larry Patel's knowledge thereof, demanded and received a $50,000.00 fee for his role in facilitating the fraudulent transaction.  Dipak Patel and Uday Raval thus acted as Larry Patel's agents, and, in turn, Jigar Patel acted as their agent as well as Larry Patel's agent.  Larry Patel controlled Dipak Patel and Uday Raval by giving them instructions regarding the transaction, and Dipak Patel and Uday Raval in turn controlled Jigar Patel by giving him Larry Patel's instructions to carry out in his communications with Mr. Tannenbaum.  This agency relationship was acknowledged by Jigar Patel in his communications with Mr. Tannenbaum, and was confirmed by Dipak Patel, Uday Raval, and Larry Patel in their emails providing instructions and directions to Jigar Patel.

23.     At the time of the transactions, Jigar Patel and Mr. Tannenbaum routinely spoke

four to five times a week, if not daily, about Devi's financial condition.  In these communications, as more specifically detailed below, Jigar Patel knowingly made material misrepresentations regarding Devi's financial condition and tax liabilities to Mr. Tannenbaum at the direction and for the benefit of Pradip Patel, Dipak Patel, Uday Raval, and Larry Patel to induce Mr. Tannenbaum to purchase their Devi shares.

24.     For example, on November 18, 2020, Mr. Patel prepared and delivered—through Devi's Chief Financial Officer ("CFO") Susan Sweeney—a "Q3 Board Meeting" PowerPoint to Mr. Tannenbaum that provided a financial summary for Devi, including forecast modeling and a balance sheet imbedded in the PowerPoint.  The forecast modeling and balance sheet provided by Jigar Patel included categories for "accrued liabilities" and "deferred income tax," but falsely stated that the Company only had approximately $3 million in accrued liabilities and minimal deferred taxes ($14,000).  This was an affirmative misrepresentation, as the Company had approximately $8 million in tax liabilities that were then due and unpaid by the company.  Jigar Patel, as Devi's CEO, was aware of these undisclosed tax liabilities and intentionally misrepresented them in the Devi financial information provided to Mr. Tannenbaum.  Dipak Patel was also aware of these undisclosed tax liabilities, given his inside knowledge of Devi's financial condition and his close communications and relationship with Jigar Patel.  On information and belief, the sellers—Larry Patel, his agent Uday Raval, the Larry Patel Trust, Pradip Patel, and Weldon—were also aware of these unpaid tax liabilities, which was their motivation for dumping their shares despite being early investors.  For example, prior to entering into the transactions, Larry Patel insisted to Mr. Raval and Dipak Patel that the agreements be structured in a way that would release him from all liability, which was the reason Larry Patel used intermediaries rather than negotiating with Mr. Tannenbaum directly.

25.     On December 1, 2020, Jigar Patel prepared and delivered a Compliance Certificate under the Credit Agreement (that he directed Devi's CFO Susan Sweeney sign) to Mr. Tannenbaum.  The Compliance Certificate falsely certified that all of Devi's outstanding taxes had been paid, when in reality, Devi owed approximately $8 million in unpaid taxes at that time. *See* **Ex. 1**.  This was a clear and affirmative misrepresentation about Devi's tax liability, as explained as follows by reference to the Credit Agreement, which is attached hereto as **Exhibit 2**.

26.     Section 4.17 of the Credit Agreement makes the following representation about Devi's "Payment of Taxes":

> [A]ll material tax returns of [Devi] required to be filed by [Devi] have been timely filed, all such tax returns and reports are true, correct and complete in all material respects, and all taxes shown on such returns to be due and payable and all assessments, fees, and other similar governmental charges imposed by a tax authority upon [Devi] and upon its assets, income, businesses and franchises that are due and payable *have been paid when due and payable[.]*

**Ex. 2** § 4.17 (emphasis added).  In a covenant on "Taxes" in Section 5.6 of the Credit Agreement, Devi affirmatively covenanted that it would "[c]ause all Taxes, whether real, personal, or otherwise, due or payable by, or imposed, levied, or assessed against [Devi] . . . or any of [Devi's] respective assets to be paid in full when due in accordance with Appliable Law." *Id.* § 5.6.  Section 8.1 of the Credit Agreement defines an "Event of Default" as, *inter alia*, Devi's "fail[ure] to perform or observe any covenant or other agreement contained in . . . 5.6 (Taxes)."). *Id.* § 8.1(b)(ii).

27.     Given these representations and covenants regarding the payment of taxes in the Credit Agreement, the following statement that Jigar Patel directed Devi's CFO to make in the December 1, 2020 Compliance Certificate was an affirmative misrepresentation: "[Devi's] review has not disclosed the existence on and of the date hereof and the undersigned does not have knowledge of the existence as of the date hereof of any event or condition that constitutes a Default

or Event of Default." **Ex. 1** ¶ 3.  This was false, and Jigar Patel and the additional Defendants knew it to be false, as Devi had failed to perform its covenant to pay approximately $8 million in unpaid taxes when due as required by Section 5.6 of the Credit Agreement, placing Devi in Default. **Ex. 2** §§ 5.6, 8.1(b)(ii). The December 1, 2020  Compliance Certificate also falsely stated that "the representations and warranties of [Devi] and its Subsidiaries set forth in the Credit Agreement and the other Loan Documents are true and correct in all material respects." **Ex. 1** ¶ 4.  This was another affirmative misrepresentation, given that Devi's representation about the "Payment of Taxes" set out in Section 4.17 of the Credit Agreement was not "true and correct"—and Jigar Patel and the additional Defendants knew that it was not "true and correct"—when Jigar Patel directed Devi's CFO to send the December 1, 2020 Compliance Certificate to Mr. Tannenbaum because Devi owed approximately $8 million in unpaid taxes at that time.  These misrepresentations in the December 1, 2020 Compliance Certificate were intended to induce, and ultimately did induce, Mr. Tannenbaum to purchase Devi's shares through 2 3 Suited.

28.     On January 14, 2021, Jigar Patel asked Mr. Tannenbaum to call him regarding the purchase of Pradip Patel and Larry Patel's shares.  On that call, Mr. Tannenbaum asked Jigar Patel why the sellers wanted to sell and if there were any financial problems with Devi of which he should be aware.  Jigar Patel responded that there were no problems, that Devi's financials were healthy, and that the shares had a value of approximately $1.50 a share.  Again, on that call, Jigar Patel knowingly misrepresented Devi's unpaid tax liabilities and dire financial condition for the benefit of Pradip Patel, Dipak Patel, Uday Raval and Larry Patel.

29.     Jigar Patel and Mr. Tannenbaum had similar calls to discuss the stock sales, including on January 25 and February 9, 2021.  On each of these calls, Mr. Patel made similar misrepresentations and omissions regarding Devi's financial condition and unpaid tax liabilities.

30.     Relying on these misrepresentations and omissions, Mr. Tannenbaum offered to buy the common stock shares through 2 3 Suited at approximately $.90 to $1.00 a share.  Because Devi did not have enough cash to cover the unpaid tax liabilities at the time of the investments, Defendants' misrepresentations and omissions regarding Devi's unpaid tax liabilities were material and significant—Mr. Tannenbaum and 2 3 Suited would never have purchased Defendants' shares had they known about Devi's financial condition and unpaid tax liabilities.

31.     On February 11, 2021, 2 3 Suited purchased 6,000,000 shares of Devi common stock for $5,400,000.00—$.90 a share—from Defendant Weldon.  Pradip Patel personally signed both a term sheet, *see* **Ex. 3**, and the stock purchase agreement, *see* **Ex. 4**, on behalf of Weldon. The Weldon stock purchase agreement did not include any provision specifically stating that the contract could not be voided even if it were procured based on fraudulent misrepresentations or omissions.  *See* **Ex. 4**.  Nor did it include any anti-reliance provision specifically stating that Mr. Tannenbaum was not relying on any extra-contractual representations about taxes in entering into the Weldon stock purchase agreement.  *Id.*  The Weldon stock purchase agreement included only standard "No Other Representations or Warranties" language, *id.* § 2.3, a standard "Entire Agreement" merger/integration clause, *id.* § 4.3, and a provision titled "Investor Representations" stating that each party is a "sophisticated investor engaged in the business of assessing and assuming investment risks with respect to securities, including securities such as the Shares, and further acknowledges that each party is entering into this Agreement in reliance on this acknowledgement and with the understanding, acknowledgement and agreement that":

> each party is privy to material nonpublic information regarding [Devi] (collectively, "Non-Public Information"), which Non-Public Information may be material to a reasonable investor, when making investment acquisition and/or disposition decisions, including the decision to enter into this Purchase Agreement, and each party's decision to enter into this Purchase Agreement is being made with full recognition and acknowledgement that each party may be privy to Non-Public

> Information, irrespective of whether such Non-Public Information has been provided to the other party. Each party hereby waives any claim, or potential claim, it has or may have against the other party relating to such party's possession of Non-Public Information.

*Id.* § 3.1(b).  Confirming that none of these provisions were intended to constitute a specific waiver of fraud or an anti-reliance provision disclaiming reliance on specified extra-contractual representations as to taxes—both of which would be non-customary, tailor-made carve outs—the term sheet that was signed by Pradip Patel on January 26, 2021 made it clear that the forthcoming stock purchase agreement "*will contain customary representations and warranties pertaining to the Shares and the Company*" and "*customary closing conditions*."  **Ex. 3** ¶¶ 2-3 (emphases added). Mr. Tannenbaum never would have agreed, and never did agree, that the Weldon stock purchase would be valid even if he was induced to enter into it by Jigar Patel's fraudulent misrepresentation that all of Devi's taxes had been paid.  Jigar Patel made these misrepresentations with the knowledge of and at the direction of Pradip Patel in order to induce Mr. Tannenbaum to purchase Pradip Patel's Devi stock.

32.     Indeed, in addition to serving as Defendant Weldon's agent in finalizing the transaction—including by negotiating the terms of sale, transmitting the deal documents between Defendants and Mr. Tannenbaum, and even following up with Mr. Tanenbaum via email to provide wiring instructions for Pradip Patel—Jigar Patel also entered into a personal guarantee with Pradip Patel, guaranteeing the sale of Defendant Weldon's shares for $1.00 a share.  Under the guarantee, Jigar Patel was obligated to make up the difference between the shares' sale price and $1.00 a share.  In the event the shares had not sold, Jigar Patel would have been obligated to purchase the shares for $1.00 with a closing on December 31, 2021.  Pradip Patel thus financially incentivized Jigar Patel to defraud Mr. Tannenbaum and his company, 2 3 Suited, so that Pradip Patel could dump his Devi shares.  Mr. Tannenbaum was unaware of this personal guarantee—

given Jigar Patel's misrepresentation that he had no personal relationship with any of the sellers—and would not have purchased the stock from Weldon had he been aware of it.

33.      On February 12, 2021, 2 3 Suited purchased 15,000,000 shares of Devi common stock for $15,000,000.00—$1.00 a share—from the Larry Patel Trust.  Larry Patel personally signed a term sheet, **Ex. 5**, memorializing the terms of the sale.  Jigar Patel continued to serve as Defendants' agent in finalizing these transactions, including by negotiating the terms of sale, transmitting the deal documents between Defendants and Mr. Tannenbaum, and even following up with Mr. Tannenbaum via text to get payment on Larry Patel's behalf.

34.      The resulting Larry Patel Trust stock purchase agreement, **Ex. 6**, did not include any provision specifically stating that the contract could not be voided even if it were procured based on fraudulent misrepresentations or omissions.  Nor did it include any anti-reliance provision specifically stating that Mr. Tannenbaum was not relying on any extra-contractual representations about taxes in entering into the Larry Patel Trust stock purchase agreement.  *Id.*  The Larry Patel Trust stock purchase agreement included only standard "No Other Representations or Warranties" language, *id.* § 2.3, a standard "Entire Agreement" merger/integration clause, *id.* § 4.3, and a provision titled "Investor Representations" stating that each party is a "sophisticated investor engaged in the business of assessing and assuming investment risks with respect to securities, including securities such as the Shares, and further acknowledges that each party is entering into this Agreement in reliance on this acknowledgement and with the understanding, acknowledgement and agreement that":

> each party is privy to material nonpublic information regarding [Devi] (collectively, "Non-Public Information"), which Non-Public Information may be material to a reasonable investor, when making investment acquisition and/or disposition decisions, including the decision to enter into this Purchase Agreement, and each party's decision to enter into this Purchase Agreement is being made with full recognition and acknowledgement that each party may be privy to Non-Public

> Information, irrespective of whether such Non-Public Information has been provided to the other party. Each party hereby waives any claim, or potential claim, it has or may have against the other party relating to such party's possession of Non-Public Information.

*Id.* § 3.1(b).  Confirming that none of these provisions were intended to constitute a specific waiver of fraud or an anti-reliance provision disclaiming reliance on specified extra-contractual representations as to taxes—both of which would be non-customary, tailor-made carve outs—the term sheet that was signed by Larry Patel on February 11, 2021—just the day before the stock purchase agreement was signed—made it clear that the forthcoming stock purchase agreement "*will contain customary representations and warranties pertaining to the Shares and the Company*" and "*customary closing conditions.*"  **Ex. 5** ¶¶ 2-3 (emphases added).  Mr. Tannenbaum never would have agreed, and never did agree, that the Larry Patel Trust stock purchase would be valid even if he was induced to enter into it by Jigar Patel's fraudulent misrepresentation that all of Devi's taxes had been paid.  Jigar Patel made these misrepresentations with the knowledge of and at the direction of Larry Patel and Larry Patel's intermediaries, Dipak Patel and Uday Raval, in order to induce Mr. Tannenbaum to purchase Larry Patel's Devi stock.

35.    In the spring of 2021, Jigar Patel again approached Mr. Tannenbaum about purchasing additional shares of Devi common stock, this time through Marvele and Six Groove, companies that—unbeknownst to Mr. Tannenbaum at the time—Jigar Patel personally owned.  To induce Mr. Tannenbaum to purchase these shares, Jigar Patel again knowingly made multiple misrepresentations and fraudulent omissions to Mr. Tannenbaum regarding Devi's unpaid tax liabilities and overall financial condition.

36.    Specifically, on March 23, 2021, Mr. Tannenbaum asked Jigar Patel in a text message: "Is there anything in accounting that's an issue?"  Jigar Patel responded: "I don't think so."  As the CEO of Devi at the time with knowledge of millions of dollars in unpaid tax liabilities

that did not appear on Devi's books, that was an affirmative misrepresentation.  Had Jigar Patel told Mr. Tannenbaum the truth at that time—that there were millions in unpaid taxes owed by Devi—2 3 Suited would have never moved forward with purchasing additional shares of Devi stock and would have rescinded his prior purchases of Devi stock.

37.     Then, on or around March 31, 2021, Jigar Patel prepared and sent Mr. Tannenbaum another Compliance Certificate under the Credit Agreement (that he directed Devi's CFO Susan Sweeney sign), **Ex. 7,** falsely certifying that all of Devi's outstanding taxes had been paid, when in reality, Jigar Patel was aware that Devi owed approximately $8 million in unpaid taxes for 2020 and millions more in unpaid taxes for 2021 at that time.  Specifically, like the December 1, 2020 Compliance Certificate, the March 31, 2021 Compliance Certificate made the affirmative misrepresentations that "[Devi's] review has not disclosed the existence on and of the date hereof and the undersigned does not have knowledge of the existence as of the date hereof of any event or condition that constitutes a Default or Event of Default," and "the representations and warranties of [Devi] and its Subsidiaries set forth in the Credit Agreement and the other Loan Documents are true and correct in all material respects." *Id.* ¶¶ 3-4.  These affirmative statements were false, and Jigar Patel knew them to be false, given his knowledge that Devi had failed to perform its covenant to pay millions in unpaid taxes when due as required by Section 5.6 of the Credit Agreement and that Devi's representation about the "Payment of Taxes" set out in Section 4.17 of the Credit Agreement was not "true and correct."

38.     Similarly, on May 12, 2021, Jigar Patel prepared and sent to Mr. Tannenbaum an Investor Presentation that valued Devi's shares at $1.50/share, included a financial statement and valuation of Devi, but failed to disclose Devi's unpaid tax liabilities for 2020 and 2021 that totaled approximately $13 million at that time.

39. On May 22, 2021, Mr. Tannenbaum sent Jigar Patel a text message expressing doubt about purchasing his shares, again asking "why everyone is selling." Jigar Patel reassured Mr. Tannenbaum that Devi's financials were sound, which was an affirmative misrepresentation given Mr. Patel's knowledge about Devi's precarious financial condition and the approximately $13 million in undisclosed tax liability owed by Devi.

40. On May 27, 2021, Jigar Patel directed a Company Operational Review Board presentation to be sent via email to Mr. Tannenbaum in which he again included a financial statement and valuation of Devi that affirmatively misrepresented Devi's unpaid tax liability by stating that Devi had no unpaid 2020 and 2021 taxes, whereas Devi had approximately $13 million in unpaid tax liability at that point.

41. As a result of Jigar Patel's fraudulent misrepresentations and omissions, on June 25, 2021, 2 3 Suited purchased 2,666,667 shares of Devi common stock from Defendant Six Groove for $2,826,667.02—at $1.06 a share—and 2,500,000 shares of Devi common stock from Defendant Marvele for $2,650,000—at $1.06 a share. Jigar Patel signed both a term sheet, **Exs. 8-9**, and the stock purchase agreements on behalf of both Six Groove and Marvele, **Exs. 10-11**, as the "Manager" of those companies.

42. The Six Groove and Marvele stock purchase agreements did not include any provision specifically stating that the contracts could not be voided even if they were procured based on fraudulent misrepresentations or omissions. Nor did they include any anti-reliance provision specifically stating that Mr. Tannenbaum was not relying on any extra-contractual representations about taxes in entering into the Six Groove and Marvele stock purchase agreements. *Id.* The Six Groove and Marvele stock purchase agreements included only standard "No Other Representations or Warranties" language, **Ex. 10** § 2.3; **Ex. 11** § 2.3, a standard "Entire

17

Agreement" merger/integration clause, **Ex. 10** § 4.3; **Ex. 11** § 4.3, and a provision titled "Investor Representations" stating that each party is a "sophisticated investor engaged in the business of assessing and assuming investment risks with respect to securities, including securities such as the Shares, and further acknowledges that each party is entering into this Agreement in reliance on this acknowledgement and with the understanding, acknowledgement and agreement that":

> each party is privy to material nonpublic information regarding [Devi] (collectively, "Non-Public Information"), which Non-Public Information may be material to a reasonable investor, when making investment acquisition and/or disposition decisions, including the decision to enter into this Purchase Agreement, and each party's decision to enter into this Purchase Agreement is being made with full recognition and acknowledgement that each party may be privy to Non-Public Information, irrespective of whether such Non-Public Information has been provided to the other party. Each party hereby waives any claim, or potential claim, it has or may have against the other party relating to such party's possession of Non-Public Information.

**Ex. 10** § 3.1(b); **Ex. 11** § 3.1(b).   Confirming that none of these provisions were intended to constitute a specific waiver of fraud or an anti-reliance provision disclaiming reliance on specified extra-contractual representations as to taxes—both of which would be non-customary, tailor-made carve outs—the term sheets for Marvele and Six Groove that were signed by Jigar Patel on June 3, 2021 made it clear that the forthcoming stock purchase agreement "*will contain customary representations and warranties pertaining to the Shares and the Company*" and "*customary closing conditions.*"   **Ex. 8** ¶¶ 2-3 (emphases added); **Ex. 9** ¶¶ 2-3 (emphases added).   Mr. Tannenbaum never would have agreed, and never did agree, that the Marvele or Six Groove stock purchases would be valid even if he was induced to enter into them based on Jigar Patel's fraudulent misrepresentation that all of Devi's taxes had been paid.

43.     In total, 2 3 Suited purchased 26,166,667 shares of Devi stock for $25.9 million from Defendants Larry Patel Trust, Weldon, Marvele, and Six Groove.  Had 2 3 Suited known about the $13 million in undisclosed tax liabilities owed by Devi, none of these purchases would

have been consummated.

44.     Over the course of the following year, Jigar Patel took further affirmative steps to conceal Devi's unpaid tax liabilities and prevent them from coming to light.  Specifically, he delayed Devi's 2020 financial audits from being completed until November 2021, and delayed Devi's 2021 financial audit indefinitely—it still has not been completed.  For example, Jigar Patel withheld journal entries regarding taxes and other accounting and record-keeping information that was necessary for Devi's auditor, Cohn Reznick, to complete the 2021 audit throughout the entire 2022 fiscal year.  When Mr. Tannenbaum pushed Jigar Patel on the status of the financial audits, Jigar Patel would consistently lie, say that there were no issues, and that the audit was forthcoming.

45.     After the 2020 audit came back, Jigar Patel fired Devi's CFO, Susan Sweeney, falsely blaming her for the audit delays.  On information and belief, Dipak Patel knew about and participated in this decision.

46.     Throughout the remainder of 2021 and into 2022, Jigar Patel failed to provide Mr. Tannenbaum and the Board with accurate, up to date information regarding Devi's finances or operations.

47.     On information and belief, Jigar Patel delayed Devi's audit and withheld information from Mr. Tannenbaum and the Board not only to conceal the $13 million in unpaid tax liabilities he had affirmatively misrepresented and concealed in connection with Defendants' sales of Devi stock, but also to conceal his gross mismanagement and fraudulent accounting at Devi.

48.     For example, on information and belief, Jigar Patel was directing intercompany sales of cannabis product from a Devi cultivation facility to a Devi dispensary to be booked to revenue for the cultivation on Devi's books as if they were high-margin, external sales, even

though the product was never sold to any end user.  Instead, the product was old and contaminated and was left to rot in a storage facility, but was never reconciled on Devi's books as a loss.  These artificial sales that did not bring in any revenue to Devi are just one of the many reasons that Devi's financial statements were inflated, why Devi did not have enough cash to pay its taxes, and why Jigar Patel intentionally delayed audits and concealed information from the Board and Mr. Tannenbaum.  On information and belief, all Defendants knew about these shady accounting practices and operations, which is why all Defendants wanted to dump their shares in 2021.

49.     Jigar Patel concealed further mismanagement issues from Mr. Tannenbaum and the Board, such as the fact that the vast majority of the cannabis products grown at Devi's Arizona facilities turned out to be unsellable, leaving Devi with the expense of growth with low revenue, and that there was a fire at one of Devi's properties that Jigar Patel never disclosed.  Jigar Patel also used Devi funds to fund other companies he had an interest in, and issued off-book loans from Devi to companies he had an interest in, without accounting for those transactions in Devi's books and records.  On information and belief, Dipak Patel knew about all of—and the remaining Defendants knew about some if not all of—these irregularities obfuscating the true state of Devi's financial condition.

50.     Jigar Patel's misconduct only started to come to light after he resigned as Devi's CEO in October 2022 and the new members of company staff began reviewing the company's books and records containing the financial information that Jigar Patel had previously (and fraudulently) misrepresented and concealed.

51.     While the full extent of Jigar Patel's malfeasance and fraud at Devi is still being uncovered, the Board and Mr. Tannenbaum learned the extent of his false representations and omissions about Devi's unpaid tax liabilities at a March 2, 2023 Board Meeting at which it was

revealed that Jigar Patel had misrepresented that all 2020 and 2021 taxes had been paid when in fact $13 million in taxes had never been paid.

52.     At a May 17, 2023 shareholder meeting, the Board estimated that, as a result of these undisclosed liabilities and Jigar Patel's mismanagement of Devi, the Devi stock purchased by Mr. Tannenbaum through 2 3 Suited in 2021 was valued at "ten to fifteen cents on the dollar"— a loss of over $20 million resulting from Defendants' fraud. This was recently confirmed by the appointed of a receiver for Devi due to its precarious financial condition, and the receiver's purchase of warrants to buy millions of shares of Devi common stock for just $100.

53.     Shortly after Defendants' fraud was revealed, on June 21, 2023, Plaintiff sent Defendants a demand letter noting that "due to the patently false statements made by Jigarkumar Patel in connection with the above-mentioned agreements, 2 3 Suited will be filing a claim asserting that Purchaser was fraudulently induced to enter into the Investments unless Jigarkumar Patel ('Jigar Patel') and the Sellers resolve this matter immediately." **Ex. 12**.  In the demand letter, Plaintiff noted that it retained the stock purchased from Defendants and requested rescission of all of the stock purchases.  *See id.* ("2 3 Suited hereby demands the refund of the entirety of its Investments, at which time it will return the common stock it received.").  Defendants failed to respond to this letter.  Since then, Plaintiff has discovered that—contrary to Jigar Patel's representations to Mr. Tannenbaum that he had no personal relationship to any of the sellers— Pradip Patel and Larry Patel are Jigar Patel's family members and/or close associates, and that Jigar Patel even personally guaranteed the sale of Pradip Patel's shares.

54.     All conditions precedent to the filing of this lawsuit have occurred or have otherwise been waived or excused.

55.     As a result of Defendants' fraudulent conduct, 2 3 Suited was obligated to engage

the services of the undersigned law firm and has thus been forced to incur attorneys' fees and costs.

<u>COUNT I</u>
**VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5, 15 U.S.C. § 78j(b) AND 17 C.F.R. § 240.10b-5**
**(against Defendants Jigar Patel, Dipak Patel, Pradip Patel, and Weldon in Connection with the February 11, 2021 Stock Purchase from Weldon)**

56. 2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

57. This claim is brought under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against Defendants Jigar Patel, Dipak Patel, Pradip Patel, and Weldon.

58. Jigar Patel, Dipak Patel, Pradip Patel, and Weldon all: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiffs in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59. As set forth above, Jigar Patel, Dipak Patel, Pradip Patel, and Weldon knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock owned by Weldon at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock. But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

60. Specifically, Jigar Patel, acting at the direction and as the agents of Dipak Patel, Pradip Patel and Weldon, made the misrepresentations and omissions detailed above in Paragraphs 20, 23-32 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Weldon.

22

61.     These misrepresentations and omissions were material to 2 3 Suited and induced 2 3 Suited to purchase Devi's stock.

62.     The misrepresentations and omissions made by or at the direction of Jigar Patel, Dipak Patel, Pradip Patel, and Weldon were made in connection with the purchase of securities, and 2 3 Suited invested money in Devi stock with the expectation of future profits generated by Devi.

63.     Jigar Patel, Dipak Patel, Pradip Patel, and Weldon all knew that their misrepresentations and omissions made to solicit 2 3 Suited's funds were materially false and misleading.

64.     Had 2 3 Suited known that the representations made by or at the direction of Jigar Patel, Dipak Patel, Pradip Patel, and Weldon were false and misleading, 2 3 Suited would not have purchased shares of Devi.

65.     As a direct and proximate result of the fraudulent conduct of Jigar Patel, Dipak Patel, Pradip Patel, and Weldon, as alleged herein, 2 3 Suited suffered harm.

66.      Plaintiff still owns the stock purchased from Weldon and seeks rescission of the entirety of the stock purchase as a result of the fraudulent conduct of Jigar Patel, Dipak Patel, Pradip Patel, and Weldon.  Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

### COUNT II
**VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5, 15 U.S.C. § 78j(b) AND 17 C.F.R. § 240.10b-5**
**(against Defendants Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust in Connection with the February 12, 2021 Stock Purchase from the Larry Patel Trust )**

67.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

68.     This claim is brought under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against Defendants Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust.

69.     Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust all: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiffs in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As set forth above, Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock owned by the Larry Patel Trust at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock.  But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

71.     Specifically, Jigar Patel, acting at the direction and as the agents of Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust, made the misrepresentations and omissions detailed above in Paragraphs 20, 23-30, 33-34, in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00—$1.00 a share—from the Larry Patel Trust.

72.     These misrepresentations and omissions were material to 2 3 Suited and induced 2 3 Suited to purchase Devi's stock.

73.     The misrepresentations and omissions made by or at the direction of Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust were made in connection with the purchase of securities, and 2 3 Suited invested money in Devi stock with the expectation of future

profits generated by Devi.

74.     Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel all knew that their misrepresentations and omissions made to solicit 2 3 Suited's funds were materially false and misleading.

75.     Had 2 3 Suited known that the representations made by or at the direction of Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust were false and misleading, 2 3 Suited would not have purchased shares of Devi.

76.     As a direct and proximate result of the fraudulent conduct of Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust as alleged herein, 2 3 Suited suffered harm.

77.     Plaintiff still owns the stock purchased from the Larry Patel Trust and seeks rescission of the entirety of the stock purchase as a result of the fraudulent conduct of Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust.  Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

## <u>COUNT III</u>
**VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5, 15 U.S.C. § 78j(b) AND 17 C.F.R. § 240.10b-5**
**(against Defendants Jigar Patel and Marvele in Connection with the June 25, 2021 Stock Purchase from Marvele)**

78.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

79.     This claim is brought under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against Defendants Jigar Patel and Marvele.

80.     Jigar Patel and Marvele: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact; and (c) engaged in acts, practices, and a course of

business that operated as a fraud and deceit upon Plaintiffs in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.     As set forth above, Jigar Patel and Marvele knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock owned by Marvele at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock. But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

82.     Specifically, Jigar Patel and Marvele made the misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42, in order to induce 2 3 Suited to purchase 2,500,000 shares of Devi common stock from Marvele for $2,650,000—at $1.06 a share.

83.     These misrepresentations and omissions were material to 2 3 Suited and induced 2 3 Suited to purchase Devi's stock.

84.     The misrepresentations and omissions made by or at the direction of Jigar Patel and Marvele were made in connection with the purchase of securities, and 2 3 Suited invested money in Devi stock with the expectation of future profits generated by Devi.

85.     Jigar Patel and Marvele knew that their misrepresentations and omissions made to solicit 2 3 Suited's funds were materially false and misleading.

86.     Had 2 3 Suited known that the representations made by or at the direction of Jigar Patel and Marvele were false and misleading, 2 3 Suited would not have purchased shares of Devi.

87.     As a direct and proximate result of the fraudulent conduct of Jigar Patel and Marvele as alleged herein, 2 3 Suited suffered harm.

88.     Plaintiff still owns the stock purchased from Marvele and seeks rescission of the entirety of the stock purchase as a result of the fraudulent conduct of Jigar Patel and Marvele. Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

## COUNT IV
### VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5, 15 U.S.C. § 78j(b) AND 17 C.F.R. § 240.10b-5
### (against Defendants Jigar Patel and Six Groove in Connection with the June 25, 2021 Stock Purchase from Six Groove)

89.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

90.     This claim is brought under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against Defendants Jigar Patel and Six Groove.

91.     Jigar Patel and Six Groove: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiffs in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

92.     As set forth above, Jigar Patel and Six Groove knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock owned by Six Groove at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock. But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

93.     Specifically, Jigar Patel and Six Groove made the misrepresentations and omissions

detailed above in Paragraphs 23-30, 35-42, in order to induce 2 3 Suited to purchase 2,666,667 shares of Devi common stock from Six Groove for $2,826,667.02—at $1.06 a share.

94.     These misrepresentations and omissions were material to 2 3 Suited and induced 2 3 Suited to purchase Devi's stock.

95.     The misrepresentations and omissions made by or at the direction of Jigar Patel and Six Groove were made in connection with the purchase of securities, and 2 3 Suited invested money in Devi stock with the expectation of future profits generated by Devi.

96.     Jigar Patel and Six Groove knew that their misrepresentations and omissions made to solicit 2 3 Suited's funds were materially false and misleading.

97.     Had 2 3 Suited known that the representations made by or at the direction of Jigar Patel and Six Groove were false and misleading, 2 3 Suited would not have purchased shares of Devi.

98.     As a direct and proximate result of the fraudulent conduct of Jigar Patel and Six Groove as alleged herein, 2 3 Suited suffered harm.

99.     Plaintiff still owns the stock purchased from Six Groove and seeks rescission of the entirety of the stock purchase as a result of the fraudulent conduct of Jigar Patel and Six Groove. Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

**COUNT V**
**VIOLATION OF FLORIDA SECURITIES AND INVESTOR PROTECTION ACT**
**(against Defendants Jigar Patel, Dipak Patel, Pradip Patel, and Weldon in Connection with the February 11, 2021 Stock Purchase from Weldon )**

100.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

101.     The investments made by 2 3 Suited were "securities" as defined by the Florida

Securities and Investor Protection Act, Section 517.301, Florida Statutes, et seq. (the "Florida Act").

102.    Section 517.301 makes it unlawful for a person, in connection with the offer, sale, or purchase of any investment or security, directly or indirectly:

    a.   To employ any device, scheme, or artifice to defraud;

    b.   To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading; or

    c.   To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

103.    As alleged, Jigar Patel, Dipak Patel, Pradip Patel, and Weldon violated the Florida Act by, among other things: (i) employing a device, scheme or artifice to defraud; (ii) making untrue statements of material facts and omitting to state material facts that would render the statements misleading in light of the circumstances under which they are made; (iii) engaging in an act, practice, or course of business which operates or would operate as a fraud or deceit upon a person; and (iv) knowingly and willfully falsifying, concealing, or covering up, by any trick, scheme, or device, a material fact, making any false, fictitious, or fraudulent statement or representation, or making or using any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

104.    As set forth above, Jigar Patel, Dipak Patel, Pradip Patel, and Weldon knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi

common stock at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock. But for Defendants' misrepresentations and omissions, 2 3 Suited would not have purchased the stock from Weldon.

105.    Specifically, Jigar Patel, acting at the direction and as the agent of Dipak Patel, Pradip Patel and Weldon, made the misrepresentations and omissions detailed above in Paragraphs 20, 23-32 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Defendant Weldon.

106.    The Florida Act provides for civil liability for these violations:

> Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Fla. Stat. § 517.211.

107.    2 3 Suited is a "person . . . purchasing the security," and each Defendant—Jigar Patel, Dipak Patel, Pradip Patel, and Weldon—constitutes either a person selling the security, or a director, officer, or agent of the seller who personally participated or aided in making the sale.

108.    Jigar Patel, Dipak Patel, Pradip Patel, and Weldon have directly sold securities to 2 3 Suited or have aided in making the sale of securities as a director, officer, partner, or agent of the seller for such securities.

109.    Pursuant to the Florida Act, Jigar Patel, Dipak Patel, Pradip Patel, and Weldon are jointly and severally liable to 2 3 Suited as sellers of the securities.

110.    Because Plaintiff still owns the stock purchased from Weldon, rescission is the appropriate remedy.  Rescission equates to the entirety of the purchase price, plus interest, because

Plaintiff has received no benefits from the Devi stock.

**COUNT VI**
**VIOLATION OF FLORIDA SECURITIES AND INVESTOR PROTECTION ACT**
**(against Defendants Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel**
**Trust in Connection with the February 12, 2021 Stock Purchase from the Larry Patel**
**Trust)**

111.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

112.     The investments made by 2 3 Suited were "securities" as defined by the Florida Securities and Investor Protection Act, Section 517.301, Florida Statutes, et seq. (the "Florida Act").

113.     Section 517.301 makes it unlawful for a person, in connection with the offer, sale, or purchase of any investment or security, directly or indirectly:

    a.   To employ any device, scheme, or artifice to defraud;

    b.   To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading; or

    c.   To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

114.     As alleged, Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust violated the Florida Act by, among other things: (i) employing a device, scheme or artifice to defraud; (ii) making untrue statements of material facts and omitting to state material facts that would render the statements misleading in light of the circumstances under which they are made; (iii) engaging in an act, practice, or course of business which operates or would operate as a fraud or deceit upon a person; and (iv) knowingly and willfully falsifying, concealing, or covering up,

31

by any trick, scheme, or device, a material fact, making any false, fictitious, or fraudulent statement or representation, or making or using any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

115.    As set forth above, Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock.  But for Defendants' misrepresentations and omissions, 2 3 Suited would not have purchased the stock from the Larry Patel Trust.

116.    Specifically, Jigar Patel, acting at the direction and as the agent of Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust, made the misrepresentations and omissions detailed above in Paragraphs 20, 23-30, 33-34 in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00—$1.00 a share—from the Larry Patel Trust.

117.    The Florida Act provides for civil liability for these violations:

> Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Fla. Stat. § 517.211.

118.    2 3 Suited is a "person . . . purchasing the security," and each Defendant— Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust—constitutes either a person selling the security, or a director, officer, or agent of the seller who personally participated or aided in making the sale.

119.     Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust have directly sold securities to 2 3 Suited or have aided in making the sale of securities as a director, officer, partner, or agent of the seller for such securities.

120.     Pursuant to the Florida Act, Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust are jointly and severally liable to 2 3 Suited as sellers of the securities.

121.     Because Plaintiff still owns the stock purchased from the Larry Patel Trust, rescission is the appropriate remedy.  Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

## COUNT VII
## VIOLATION OF FLORIDA SECURITIES AND INVESTOR PROTECTION ACT
### (against Defendants Jigar Patel and Marvele in Connection with the June 25, 2021 Stock Purchase from Marvele)

122.     2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

123.     The investments made by 2 3 Suited were "securities" as defined by the Florida Securities and Investor Protection Act, Section 517.301, Florida Statutes, et seq. (the "Florida Act").

124.     Section 517.301 makes it unlawful for a person, in connection with the offer, sale, or purchase of any investment or security, directly or indirectly:

    a.  To employ any device, scheme, or artifice to defraud;

    b.  To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading; or

    c.  To engage in any transaction, practice, or course of business which operates or

would operate as a fraud or deceit upon a person.

125.    As alleged, Jigar Patel and Marvele violated the Florida Act by, among other things: (i) employing a device, scheme or artifice to defraud; (ii) making untrue statements of material facts and omitting to state material facts that would render the statements misleading in light of the circumstances under which they are made; (iii) engaging in an act, practice, or course of business which operates or would operate as a fraud or deceit upon a person; and (iv) knowingly and willfully falsifying, concealing, or covering up, by any trick, scheme, or device, a material fact, making any false, fictitious, or fraudulent statement or representation, or making or using any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

126.    As set forth above, Jigar Patel and Marvele knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock.  But for Defendants' misrepresentations and omissions, 2 3 Suited would not have purchased the stock from Marvele.

127.    Specifically, Jigar Patel, acting at the direction and as the agent of Marvele, made the misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42 in order to induce 2 3 Suited to purchase 2,500,000 shares of Devi common stock from Marvele for $2,650,000—at $1.06 a share.

128.    The Florida Act provides for civil liability for these violations:

Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such

person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Fla. Stat. § 517.211.

129.    2 3 Suited is a "person . . . purchasing the security," and each Defendant— Jigar Patel and Marvele—constitutes either a person selling the security, or a director, officer, or agent of the seller who personally participated or aided in making the sale.

130.    Jigar Patel and Marvele have directly sold securities to 2 3 Suited or have aided in making the sale of securities as a director, officer, partner, or agent of the seller for such securities.

131.    Pursuant to the Florida Act, Jigar Patel and Marvele are jointly and severally liable to 2 3 Suited as sellers of the securities.

132.    Because Plaintiff still owns the stock purchased from Marvele, rescission is the appropriate remedy.  Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

<u>**COUNT VIII**</u>
**VIOLATION OF FLORIDA SECURITIES AND INVESTOR PROTECTION ACT**
**(against Defendants Jigar Patel and Marvele in Connection with the June 25, 2021 Stock Purchase from Six Groove)**

133.    2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

134.    The investments made by 2 3 Suited were "securities" as defined by the Florida Securities and Investor Protection Act, Section 517.301, Florida Statutes, et seq. (the "Florida Act").

135.    Section 517.301 makes it unlawful for a person, in connection with the offer, sale, or purchase of any investment or security, directly or indirectly:

    a.   To employ any device, scheme, or artifice to defraud;

    b.   To obtain money or property by means of any untrue statement of a material fact

or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading; or

c.  To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

136.  As alleged, Jigar Patel and Six Groove violated the Florida Act by, among other things: (i) employing a device, scheme or artifice to defraud; (ii) making untrue statements of material facts and omitting to state material facts that would render the statements misleading in light of the circumstances under which they are made; (iii) engaging in an act, practice, or course of business which operates or would operate as a fraud or deceit upon a person; and (iv) knowingly and willfully falsifying, concealing, or covering up, by any trick, scheme, or device, a material fact, making any false, fictitious, or fraudulent statement or representation, or making or using any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

137.  As set forth above, Jigar Patel and Six Groove knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 to induce 2 3 Suited to purchase Devi common stock at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock.  But for Defendants' misrepresentations and omissions, 2 3 Suited would not have purchased the stock from Six Groove.

138.  Specifically, Jigar Patel, acting at the direction and as the agent of Six Groove, made the misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42 in order to induce 2 3 Suited to purchase 2,666,667 shares of Devi common stock from Six Groove for

$2,826,667.02—at $1.06 a share.

139.    The Florida Act provides for civil liability for these violations:

Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Fla. Stat. § 517.211.

140.    2 3 Suited is a "person . . . purchasing the security," and each Defendant— Jigar Patel and Six Groove—constitutes either a person selling the security, or a director, officer, or agent of the seller who personally participated or aided in making the sale.

141.    Jigar Patel and Six Groove have directly sold securities to 2 3 Suited or have aided in making the sale of securities as a director, officer, partner, or agent of the seller for such securities.

142.    Pursuant to the Florida Act, Jigar Patel and Six Groove are jointly and severally liable to 2 3 Suited as sellers of the securities.

143.    Because Plaintiff still owns the stock purchased from Six Groove, rescission is the appropriate remedy.  Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

## <u>COUNT IX</u>
### COMMON LAW FRAUDULENT INDUCEMENT
### (against all Defendants)

144.    2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

145.    As set forth above, Defendants knowingly made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years

2020 and 2021 to induce 2 3 Suited to purchase Devi common stock they owned at artificially inflated prices, and 2 3 Suited relied on those fraudulent misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock. But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

146.    Specifically, Jigar Patel acting at the direction and as the agent of Dipak Patel, Pradip Patel, and Weldon, made the misrepresentations and omissions detailed above in Paragraphs 20, 23-32 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Weldon.

147.    Jigar Patel, acting at the direction and as the agent of Dipak Patel, Uday Raval, Larry Patel and the Larry Patel Trust, made the misrepresentations and omissions detailed above in Paragraphs 20, 23-30, 33-34 in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00 at $1.00 a share from the Larry Patel Trust.

148.    Jigar Patel, acting on his own behalf and on behalf of Marvele, made the misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42 in order to induce 2 3 Suited to purchase 2,500,000 shares of Devi common stock for $2,650,000 at $1.06 a share from Marvele.

149.    Jigar Patel, acting on his own behalf and on behalf of Six Groove, made the misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42 in order to induce 2 3 Suited to purchase 2,666,667 shares of Devi common stock for $2,826,667.02 at $1.06 a share from Six Groove.

150.    These statements of fact and omissions were material and Defendants knew them to be false when they were made.

151.    Defendants made these false statements with the intention that 2 3 Suited would be

induced to act on them, including by purchasing Devi stocks.

152.    In making these misrepresentations, Jigar Patel acted as agent for and at the direction of Defendants Dipak Patel, Uday Raval, Larry Patel, Larry Patel Trust, Pradip Patel, Weldon, Marvele, and Six Groove.

153.    2 3 Suited justifiably relied on Jigar Patel's misrepresentations to its detriment when it purchased Devi stock from Defendants.

154.    As a direct and proximate result of Defendants' fraudulent conduct, 2 3 Suited suffered harm, and seeks rescission of each of the transactions it was fraudulently induced to enter into: the February 11, 2021 stock purchase from Weldon; the February 12, 2021 stock purchase from the Larry Patel Trust; the June 25, 2021 stock purchase from Marvele; and the June 25, 2021 stock purchase from Six Groove. Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

**COUNT X**
**NEGLIGENT MISREPRESENTATION**
**(against all Defendants)**

155.    2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

156.    In the alternative, as set forth above, Defendants made material misrepresentations and omissions to 2 3 Suited regarding Devi's financial condition and unpaid tax liability for fiscal years 2020 and 2021 that they knew or should have known to be false to induce 2 3 Suited to purchase Devi common stock they owned at artificially inflated prices, and 2 3 Suited relied on those misrepresentations and omissions to its detriment in purchasing the now nearly worthless stock.  But for Defendants' misrepresentations and omissions, 2 3 Suited would not have made any of the purchases at issue.

157.     Specifically, Jigar Patel, acting at the direction and as the agent of Dipak Patel, Pradip Patel and Weldon, made the misrepresentations and omissions detailed above in Paragraphs 20, 23-32 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Defendant Weldon.  Jigar Patel, Dipak Patel, Pradip Patel, and Weldon knew or should have known these misrepresentations and omissions were false, or recklessly disregarded their falsity.

158.     Jigar Patel, acting at the direction and as the agent of Dipak Patel, Uday Raval, Larry Patel and the Larry Patel Trust, made the misrepresentations and omissions detailed above in Paragraphs 20, 23-30, 33-34 in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00 at $1.00 a share from the Larry Patel Trust.  Jigar Patel, Dipak Patel, Uday Raval, Larry Patel, and the Larry Patel Trust knew or should have known these misrepresentations and omissions were false, or recklessly disregarded their falsity.

159.     Jigar Patel, acting on his own behalf and on behalf of Marvele, made the misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42 in order to induce 2 3 Suited to purchase 2,500,000 shares of Devi common stock for $2,650,000 at $1.06 a share from Defendant Marvele.  Jigar Patel and Marvele knew or should have known these misrepresentations and omissions were false, or recklessly disregarded their falsity.

160.     Jigar Patel, acting on his own behalf and on behalf of Six Groove, made the misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42 in order to induce 2 3 Suited to purchase 2,666,667 shares of Devi common stock for $2,826,667.02 at $1.06 a share from Six Groove.  Jigar Patel and Six Groove knew or should have known these misrepresentations and omissions were false, or recklessly disregarded their falsity.

161.     Defendants made these false statements with the intention that 2 3 Suited would be

induced to act on them, including by purchasing Devi stock.

162.    In making these misrepresentations, Jigar Patel acted as agent for Defendants Dipak Patel, Uday Raval, Larry Patel, Larry Patel Trust, Pradip Patel, Weldon, Marvele, and Six Groove.

163.    2 3 Suited justifiably relied on Jigar Patel's misrepresentations to its detriment when it purchased Devi stock from Defendants.

164.    As a direct and proximate result of Defendants' fraudulent conduct, 2 3 Suited suffered harm, and seeks rescission of each of the transactions it was fraudulently induced to enter into: the February 11, 2021 stock purchase from Weldon; the February 12, 2021 stock purchase from the Larry Patel Trust; the June 25, 2021 stock purchase from Marvele; and the June 25, 2021 stock purchase from Six Groove. Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

**COUNT XI**
**CIVIL CONSPIRACY**
**(against all Defendants)**

165.    2 3 Suited repeats and realleges each of the allegations in paragraphs 1 through 55 as if fully restated herein.

166.    When Defendants learned of Devi's poor financial condition and unpaid tax liabilities from Jigar Patel in or around late 2020, they entered into an agreement and conspiracy to defraud 2 3 Suited and sell their shares at artificially inflated prices in 2021, excepting that Pradip Patel is not alleged to have conspired with his company Weldon and Jigar Patel is not alleged to have conspired with his companies Marvele and Six Groove.

167.    Each of Jigar Patel, Dipak Patel, Uday Raval, Pradip Patel, Weldon, Larry Patel, the Larry Patel Trust, Six Groove, and Marvele overtly acted in pursuance of this conspiracy.

168.    Jigar Patel made the misrepresentations and omissions detailed above in Paragraphs

20, 23-34  in order to induce 2 3 Suited to purchase shares of Devi.

169.    Pradip Patel, Dipak Patel, and Weldon directed Jigar Patel to make the misrepresentations and omissions detailed above in Paragraphs 20, 23-32 in order to induce 2 3 Suited to purchase 6,000,000 shares of Devi common stock for $5,400,000.00 at $.90 a share from Defendant Weldon. Additionally, on February 11, 2021, Weldon sold its shares of Devi common stock at an inflated price to 2 3 Suited.   Pradip Patel personally signed the stock purchase agreement on behalf of Weldon.

170.    Larry Patel, Dipak Patel, Uday Raval, and the Larry Patel Trust directed Jigar Patel to make the misrepresentations and omissions detailed above in Paragraphs 20, 23-30, 33-34 in order to induce 2 3 Suited to purchase 15,000,000 shares of Devi common stock for $15,000,000.00 at $1.00 a share from the Larry Patel Trust. Additionally, on February 12, 2021, the Larry Patel Trust sold its shares of Devi common stock at an inflated price to 2 3 Suited.  Larry Patel personally signed a term sheet memorializing the terms of the sale.

171.    Marvele directed Jigar Patel to make the misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42 in order to induce 2 3 Suited to purchase 2,500,000 shares of Devi common stock for $2,650,000 at $1.06 a share from Defendant Marvele.  Additionally, on June 25, 2021, Marvele sold its shares of Devi common stock at an inflated price to 2 3 Suited.

172.    Six Groove directed Jigar Patel to make the misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42  in order to induce 2 3 Suited to purchase 2,666,667 shares of Devi common stock for $2,826,667.02 at $1.06 a share from Six Groove.  Additionally, on June 25, 2021, Six Groove sold its shares of Devi common stock at an inflated price to 2 3 Suited.

173.    As a direct and proximate result of Defendants' unlawful conspiracy, 2 3 Suited

suffered harm, and seeks rescission of each of the transactions it was fraudulently induced to enter into: the February 11, 2021 stock purchase from Weldon; the February 12, 2021 stock purchase from the Larry Patel Trust; the June 25, 2021 stock purchase from Marvele; and the June 25, 2021 stock purchase from Six Groove. Rescission equates to the entirety of the purchase price, plus interest, because Plaintiff has received no benefits from the Devi stock.

**COUNT XII**
**RESCISSION**
**(against Defendants Jigar Patel, Pradip Patel, Weldon, Larry Patel, the Larry Patel Trust, Marvele, and Six Groove)**

174.    As a remedy for all the foregoing claims, 2 3 Suited seeks rescission of each of the transactions it was fraudulently induced to enter into: the February 11, 2021 stock purchase from Weldon; the February 12, 2021 stock purchase from the Larry Patel Trust; the June 25, 2021 stock purchase from Marvele; and the June 25, 2021 stock purchase from Six Groove.

175.    Rescission is an express remedy under the Florida Securities and Investor Protection Act and Plaintiff's other claims. *See, e.g.* Fla. Stat. § 517.211. However, to the extent a standalone common law rescission claim is required, 2 3 suited brings this standalone claim for rescission.

176.    2 3 Suited purchased 6,000,000 shares of Devi common stock for $5,400,000.00— $.90 a share—from Weldon on February 11, 2021. Pradip Patel signed the term sheet and stock purchase agreement on behalf of Weldon. This stock purchase should be rescinded based on the fraudulent misrepresentations and omissions detailed above in Paragraphs 20, 23-32. Plaintiff has notified Pradip Patel and Weldon of its rescission of the stock purchase and offered to tender the stock back to Weldon and Pradip Patel. 2 3 Suited received no benefits from the stock purchase, so there is nothing to be restored other than the stock itself. 2 3 Suited has no adequate remedy at law as a result of Defendants' fraud and is seeking only rescission in this Amended Complaint.

Rescission equates to the entirety of the purchase price, plus interest.

177.    2 3 Suited purchased 15,000,000 shares of Devi common stock for $15,000,000.00 at $1.00 a share from Larry Patel and the Larry Patel Trust on February 12, 2021.  Larry Patel signed the term sheet for the stock purchase on behalf of the Larry Patel Trust. This stock purchase should be rescinded based on the fraudulent misrepresentations and omissions detailed above in Paragraphs 20, 23-30, 33-34.  Plaintiff has notified Larry Patel and the Larry Patel Trust of its rescission of the stock purchase and offered to tender the stock back to Larry Patel and the Larry Patel Trust.  2 3 Suited received no benefits from the stock purchase, so there is nothing to be restored other than the stock itself.  2 3 Suited has no adequate remedy at law as a result of Defendants' fraud and is seeking only rescission in this Amended Complaint.  Rescission equates to the entirety of the purchase price, plus interest.

178.    2 3 Suited purchased 2,500,000 shares of Devi common stock for $2,650,000 at $1.06 a share from Jigar Patel and Marvele on June 25, 2021.  Jigar Patel signed the term sheet and stock purchase agreement on behalf of Marvel. This stock purchase should be rescinded based on the fraudulent misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42. Plaintiff has notified Jigar Patel and Marvele of its rescission of the stock purchase and offered to tender the stock back to Jigar Patel and Marvele.  2 3 Suited received no benefits from the stock purchase, so there is nothing to be restored other than the stock itself.  2 3 Suited has no adequate remedy at law as a result of Defendants' fraud and is seeking only rescission in this Amended Complaint.  Rescission equates to the entirety of the purchase price, plus interest.

179.    2 3 Suited purchased 2,666,667 shares of Devi common stock from Jigar Patel and Six Groove for $2,826,667.02 on June 25, 2021.  Jigar Patel signed the term sheet and stock purchase agreement on behalf of Six Groove. This stock purchase should be rescinded based on

the fraudulent misrepresentations and omissions detailed above in Paragraphs 23-30, 35-42. Plaintiff has notified Jigar Patel and Six Groove of its rescission of the stock purchase and offered to tender the stock back to Jigar Patel and Six Groove.  2 3 Suited received no benefits from the stock purchase, so there is nothing to be restored other than the stock itself.  2 3 Suited has no adequate remedy at law as a result of Defendants' fraud and is seeking only rescission in this Amended Complaint.  Rescission equates to the entirety of the purchase price, plus interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff 2 3 Suited demands judgment against all Defendants for rescission of the stock purchases, attorneys' fees, costs, prejudgment interest, post-judgment interest, and for such further relief as this Court deems just and proper.

Dated:  September 6, 2024                              Respectfully submitted,

                                                                    /s/ *James E. Gillenwater*
                                                                    MARK A. SALKY
                                                                    Florida Bar No. 058221
                                                                    Mark.Salky@gtlaw.com
                                                                    JAMES E GILLENWATER
                                                                    Florida Bar No. 1013518
                                                                    gillenwaterj@gtlaw.com
                                                                    JESSICA JOHNSON FISHFELD
                                                                    Florida Bar No. 1018904
                                                                    Jessica.Fishfeld@gtlaw.com
                                                                    EMILEY PAGRABS
                                                                    Florida Bar No. 1030834
                                                                    pagrabse@gtlaw.com

                                                                    **GREENBERG TRAURIG, P.A.**
                                                                    333 Southeast Second Avenue, Suite 4400
                                                                    Miami, Florida 33131
                                                                    Telephone:  305.579.0500
                                                                    Facsimile:  305.579.0717

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 6th day of September, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ James E. Gillenwater*
JAMES E. GILLENWATER

| | |
|---|---|
| **VENABLE LLP**<br>W. Barry Blum<br>Florida Bar No. 379301<br>bblum@venable.com<br>Jonathan E. Perlman<br>Florida Bar No. 773328<br>jeperlman@venable.com<br>Brett M. Halsey<br>Florida Bar No. 0013141<br>bmhalsey@venable.com<br>100 S.E. 2nd Street, 44th Floor<br>Miami, FL 33131<br>Telephone: 305.349.2300<br><br>and<br><br>**CLARK HILL**<br>Charles E. Murphy (admitted Pro Hac Vice)<br>cmurphy@clarkhill.com<br>Robin S. Weiss (admitted Pro Hac Vice)<br>rsweiss@clarkhill.com<br>220 Park Street, Suite 200<br>Birmingham, MI 48009<br>Telephone: 248.988.35879<br><br>***Attorneys for Defendants Jigarkumar Patel, Dipak Patel, Pradip Sanjay Patel, Uday Raval, Marvele LLC, Six Groove LLC, and Weldon Development LLC*** | **SHOOK, HARDY & BACON L.L.P.**<br>Citigroup Center, Suite 3200<br>201 S. Biscayne Boulevard<br>Miami, Florida 33131<br>T: 305.358.5171 \| F: 305.358.7470<br>E: drogers@shb.com<br>Lucia R. McMurray<br>lmcmurray@shb.com<br>Kathleen M. Ryan<br>kxryan@shb.com<br>Mark C. Tatum<br>kxryan@shb.com<br>Todd W. Ruskamp<br>truskamp@shb.com<br><br>***Attorney for Defendants Larry Patel 2018 Irrevocable Trust and Larry Patel*** |