UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:23-cv-81503-DMM

2 3 SUITED, LLC,

     Plaintiff,

vs.

JIGARKUMAR PATEL a/k/a Jigar Patel;
DIPAK PATEL; LARRY PATEL; PRADIP
SANJAY PATEL a/k/a Jay Patel; UDAY
RAVAL;   LARRY   PATEL   2018
IRREVOCABLE TRUST; MARVELE LLC;
SIX   GROOVE   LLC;   AND   WELDON
DEVELOPMENT LLC,

Defendants.

_____/

**MOTION OF DEFENDANTS JIGARKUMAR PATEL, DIPAK PATEL, PRADIP
SANJAY PATEL, UDAY RAVAL, MARVELE LLC, SIX GROOVE LLC, AND
WELDON DEVELOPMENT LLC TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

**VENABLE LLP**
W. Barry Blum
Florida Bar No. 379301
bblum@venable.com
Jonathan E. Perlman
Florida Bar No. 773328
jeperlman@venable.com
Brett M. Halsey
Florida Bar No. 0013141
bmhalsey@venable.com
801 Brickell Avenue, Suite 1500
Miami, FL 33131
Telephone: 305.349.2300

**CLARK HILL**
Charles E. Murphy (admitted Pro Hac Vice)
cmurphy@clarkhill.com
Robin S. Weiss (admitted Pro Hac Vice)
rsweiss@clarkhill.com
220 Park Street, Suite 200
Birmingham, MI 48009
Telephone: 248398835879

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

FACTS .................................................................................................................2

    A.    Leonard Tannenbaum and Devi Holdings, Inc. ...................................2

    B.    Plaintiff Buys Devi Stock from Four Defendants under Written Stock Purchase Agreements ..........................................................................3

    C.    Allegations of Fraud ........................................................................4

ARGUMENT .......................................................................................................5

    A.    Plaintiff Fails to State a Claim for Rescission ....................................5

        1.    Plaintiff Still Seeks the Same Monetary Damages .....................6

        2.    Plaintiff Failed to Disavow the SPAs and Waived any Claim for Rescission ..................................................................7

        3.    Plaintiff Cannot Establish the Absence of an Adequate Remedy at Law .................................................................8

    B.    The Non-Reliance Provisions of the SPAs Bar Plaintiff's Claims under Delaware and New York Law ........................................................9

    C.    The Non-Reliance Provisions of the SPAs also Bar Plaintiff's Claims under Florida Law ...........................................................................12

    D.    Plaintiff Cannot Establish Reliance as a Matter of Law ......................16

    E.    The Fraud and Misrepresentation Allegations Fail for Lack of Particularity ................................................................................17

        1.    Plaintiff's Failure to Plead that Defendants Dipak Patel, Jay Patel, and Uday Raval Ever Communicated with Plaintiff Precludes Its Claims Against Them ..........................................18

        2.    Plaintiff Fails to State Claims Based on Omissions...................18

        3.    Plaintiff Fails to Plead Sufficient Facts to Establish Agency ..................19

CONCLUSION...................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

*Anchor Bank, S.S.B. v. Conrardy*,
763 So. 2d 360 (Fla. Dist. Ct. App. 1998) ........................................................................8

*Arnold v. McFall*,
839 F. Supp. 2d 1281 (S.D. Fla. 2011) ...........................................................................17n

*Barber v. Americas Wholesale Lender*,
542 F. App'x 832 (11th Cir. 2013) ....................................................................................8

*Beeper Vibes, Inc. v. Simon Property Group, Inc.*,
600 Fed. Appx. 314 (6th Cir. 2014)..................................................................................17

*Billington v. Ginn-La Pine Island, Ltd., LLLP*,
192 So. 3d 77 (Fla. Dist. Ct. App. 2016) ...............................................................13, 14, 16

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir.1999) ........................................................................................17n

*California Institute of Arts & Technology., Inc. v. Campus Management Corp.*,
2020 WL 1692079 (S.D. Fla. Jan. 22, 2020) ..................................................................8, 9

*Emergent Capital Investment Management, LLC v. Stonepath Group*,
195 F.Supp.2d 551 (S.D.N.Y. 2002)...............................................................................10n

*Fong Kai Business Group Co. v. Shade Saver, Inc.*,
2019 WL 12304385 (M.D. Fla. April 4, 2019)............................................................15, 16

*Friedman v. American Guardian Warranty Services, Inc.*,
837 So. 2d 1165 (Fla. Dist. Ct. App. 2003) .....................................................................19

*Government of Aruba v. Sanchez*,
216 F. Supp. 2d 1320 (S.D. Fla. 2002) ...........................................................................7, 8

*Global Quest, LLC v. Horizon Yachts, Inc.*,
849 F.3d 1022 (11th Cir. 2017) .......................................................................................15

*L.H. v. Marriott International, Inc.*,
604 F. Supp. 3d 1346 (S.D. Fla. 2022) .............................................................................20

*Lower Fees, Inc. v. Bankrate, Inc.*,
74 So.3d 517 (Fla. Dist. Ct. App. 2011) .....................................................................15, 16

*McFee v. Carnival Corp.*,
2020 WL 13389096 (S.D. Fla. Apr. 22, 2020) ..................................................................20

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ................................................................17n

*Oceanic Villas, Inc. v. Godson*,
4 So. 2d 689 (Fla. 1941)...........................................................13, 15, 16, 16n

*Prairie Capital III, L.P. v. Double E Holding Corp.*,
132 A.3d 35 (Del. Ch. 2015)...........................................................10n, 12

*R.J. Reynolds Tobacco Co. v. Whitmire*,
260 So. 3d 536 (Fla. Dist. Ct. App. 2018) ..................................................19

*Rood Co. v. Board of Public Instruction*,
102 So. 2d 139 (Fla. 1958)...........................................................7, 8

*Rudolph v. Arthur Andersen & Co.*,
800 F.2d 1040 (11th Cir.1986) ..................................................18

*West Coast Roofing & Waterproofing, Inc. v. Johns Manville*, Inc.,
287 F. App'x 81 (11th Cir. 2008) ................................................................17

*Whetstone Candy Co. v. Kraft Foods, Inc.*,
351 F.3d 1067 (11th Cir. 2003) ................................................................19n

*Young v. Community Health Systems, Inc.*,
2023 WL 6121795 (11th Cir. Sept. 19, 2023) ...........................................19

*Ziemba v. Cascade International, Inc.*,
256 F.3d 1194 (11th Cir. 2001) ..................................................17n, 18

## OTHER AUTHORITIES:

15 U.S.C. § 78..........................................................................................17n

Fed. R. Civ. P. 12(b) ..................................................................................1

Private Securities Litigation Reform Act,
Pub.L. No. 104–67, 109 Stat. 737 (1995) ..................................................17n

S.D. Fla. L.R. 7.1(a) ..................................................................................1

S.D. Fla. L.R. 7.1(c) ..................................................................................1

## **INTRODUCTION**

As Jonathan Swift once aptly said: "You can't make a silk purse out of a sow's ear." 2 3 Suited's Amended Complaint seeks to do just that, by reframing its action—a legal claim to recover the money it paid for Devi Holdings, Inc. ("Devi") stock—as an action for rescission, solely to avoid this Court's enforcement of a specific disclaimer and waiver provision to which Plaintiff specifically agreed to be bound. This Court, taking Plaintiff's allegations as true, has already found Plaintiff's claims to be barred by the four stock purchase agreements effecting its purchases of Devi stock. *See* DE 72. As this Court held, 2 3 Suited expressly and affirmatively agreed and represented that it <u>knew</u> each seller had material, non-public financial information that might not be disclosed, but 2 3 Suited was entering into the stock purchase transactions "*irrespective* of whether such Non-Public Information has been provided to" it. In other words, 2 3 Suited, a sophisticated investor, <u>knew</u> the sellers possessed certain material information, including alleged tax liabilities, that may otherwise influence a decision to invest, and further <u>knew</u> that the sellers may not disclose that information, but it <u>knowingly</u> invested "irrespective" of that potential fraud. With this knowledge, 2 3 Suited voluntarily "waive[d] any claim, or potential claim, it has or may have against the other party relating to such other party's possession of Non-Public Information." Nothing in the Amended Complaint changes that reality. This Court has already these same Plaintiff's factual allegations—now gussied up and relabeled as affirmative representations rather than omissions—and dismissed Plaintiff's Complaint, finding that the contractual provisions agreed to by this highly-sophisticated investor preclude claims based entirely on representations or omissions regarding alleged undisclosed tax liabilities of Devi. *See* DE 72.

This Court found it doubtful that 2 3 Suited's claims could be recast to state a viable claim; and the Court's doubts were well founded. In a transparent attempt to avoid the impact of the provisions in the stock purchase agreements, along with the Delaware and New York choice-of-law provisions, 2 3 Suited does an about-face and pretends to seek rescission. But Plaintiff never sought to rescind the stock purchase agreements until this Amended Complaint. There are no allegations Plaintiff disavowed the agreements "with reasonable promptness" upon discovering the alleged fraud. Moreover, 2 3 Suited has an adequate remedy law *which it has already pursued* by seeking damages, thereby affirming the agreements. It is only after those claims were dismissed that Plaintiff now seeks to recast these very same allegations as a claim for rescission, in a vain effort to find a better result under Florida law. Even under Florida law, however, 2 3 Suited cannot establish the absence of an adequate remedy at law, cannot establish reliance, and cannot now seek rescission after affirming the agreements. Moreover, the specific non-reliance and waiver provisions in the stock purchase agreements also prohibit Plaintiff's claims under Florida law.

Finally, even if its claims were not barred (as this Court has already determined), Plaintiff continues to fail to state claims for fraud against these Defendants. 2 3 Suited's common law fraud and conspiracy claims also fail, and the Amended Complaint should be dismissed with prejudice.

## FACTS

### A.   Leonard Tannenbaum and Devi Holdings Inc.

Leonard Tannenbaum, the sole member of 2 3 Suited, was Plaintiff's representative in all communications alleged in the Amended Complaint. DE 73 *passim*. This Court has already recognized Tannenbaum as a very sophisticated "macro investor who has underwritten almost $10 billion of loans and taken four entities public." DE 73 ¶¶16-17; DE 72 p. 22. Beginning in 2020, he became involved with Devi when a Tannenbaum-led group (AFC Warehouse, LLC) loaned Devi up to $42.5 million under a May 2020 Credit Agreement. *Id.* ¶19.

Advanced Flower Capital Management, LLC ("AFC Capital") was appointed lenders' "agent" under the Credit Agreement, and Tannenbaum, as AFC's Board Observer, attended all Devi Board meetings and received "copies of all notices, minutes, consents and other materials that [Devi] provides to its directors at the same time and in the same manner as provided to such directors." App. 065 ¶5.17, 321-24. The Credit Agreement also required Devi to deliver to AFC Capital and Tannenbaum monthly financial statements, capital expenditure reports, compliance certificates, unaudited consolidated balance sheets and statements of cash flow, consolidated financial statements, and projections at specified intervals. App. 061 ¶5.1, 189-90. The lenders acknowledged they would be provided "material, non-public information regarding [Devi and its affiliates], their operation, assets, and existing and contemplated business plans." App. 093 ¶17.7(a).

In 2020 and 2021, Defendant Jigar Patel was Devi's CEO and President. DE 73 ¶¶18, 20. In late 2020, Tannenbaum began discussions with Jigar about Tannenbaum becoming a Devi stockholder. *Id.* ¶20.[1]

### B.   Plaintiff Buys Devi Stock from Four Defendants under Written Stock Purchase Agreements

In February and June 2021, in four different transactions, Plaintiff bought 26,166,667 shares of Devi stock for $25.87 million. DE 73. ¶¶31, 33, 41. Plaintiff made all four purchases under written stock purchase agreements ("SPAs") Plaintiff signed with the respective sellers (the "Sellers"). *Id.*; App. 210-236. The Weldon SPA signed in February 2021 includes a Delaware law choice-of-law provision. App. 212. The Six Groove SPA and Marvele SPA signed in June 2021

---

[1] While the allegations of the complaint must be taken as true on a motion to dismiss, in truth it was Tannenbaum who approached Jigar with the prospect of becoming a shareholder.

both include a New York law choice-of-law provision. App. 217, 228. In connection with all SPAs, Plaintiff 2 3 Suited was represented by the law firm O'Melveny & Myers. App. 210, 215, 226.

Section 2.3 of these three SPAs states generally that Sellers do not make any representations or warranties except for those in the SPAs. App. 211, 216, 227. However, in Section 3.1 of the SPAs, 2 3 Suited, as Purchaser, represented and warranted that it "has such knowledge and experience in financial and business matters so as to be capable of evaluating the merits and risks of its investment;" that it is "an 'accredited investor' as defined in Rule 501" of the Securities Act of 1933; that it is "a sophisticated investor engaged in the business of assessing and assuming investment risks with respect to securities," and that each party "is entering into this Agreement in reliance on this acknowledgment…" *Id.* 2 3 Suited then expressly acknowledged:

> that each party is privy to <u>material non-public information regarding the Company</u> (collectively, "Non-Public Information"), which Non-Public Information may be material to a reasonable investor, <u>when making investment acquisition and/or disposition decisions, including the decision to enter into this Purchase Agreement,</u> and each party's decision to enter into this Purchase Agreement <u>is being made with full recognition and acknowledgment that each party may be privy to Non-Public Information,</u> **<u>irrespective of whether such Non-Public Information has been provided to the other party.</u>** Each party hereby <u>waives **any claim**</u>, or potential claim, it has or may have against the other party relating to such other party's possession of Non-Public Information.

App. 211-12, 216-17, 227-28 (§3.1(b)) (emphases added).[2]

### C.    Allegations of Fraud

The facts alleged in the Amended Complaint are the same as those in the original Complaint.[3] The gist is Jigar Patel knew Plaintiff, through Tannenbaum (as Devi Board Observer and lenders'

---

[2] The SPAs also contain a merger clause in Section 4.3. App. 212, 217, 228.

[3] While Plaintiff adds a more specific reference to the Payment of Taxes provision in the Credit Agreement in Paragraph 26, none of the Defendants are a party to that agreement, and Plaintiff previously referred to the Credit Agreement in the original Complaint—it just failed to attach it. Other than relabeling the alleged facts it previously offered in support of its fraud claims as affirmative misrepresentations rather than omissions, the only new substantive facts Plaintiff offers

agent), had confidential Devi financial information, and Jigar (acting as Devi's CEO but also on behalf of all Sellers and other Defendants) allegedly "knew" but did not disclose Devi had tax liabilities not shown on Devi's financial statements that made inaccurate the Devi financial information Plaintiff had. As this Court has already recognized, at bottom, Plaintiff asserts an "omissions case." *See* DE 72 p. 26 ("Thus, all of Plaintiff's claims fundamentally rely on an allegation that, by omitting Devi's tax liabilities, Defendants' created a fraudulent impression of Devi's financial situation."). Although Plaintiff attempts to recharacterize some of the alleged facts as affirmative misrepresentations, the supposed "misrepresentations" all rest on Jigar Patel's alleged <u>failure to disclose</u> Devi's supposed tax liabilities. *See* DE 73, ¶¶25, 28, 36, 37, 38, 39, 40. The allegations all remain inextricably tied to Jigar's alleged non-disclosure of material non-public information: the supposed tax liabilities. Plaintiff's case therefore still rests on Sellers' alleged failures to disclose material non-public information about Devi's supposed tax liabilities, allegedly known to Sellers through Jigar Patel, which non-disclosure purportedly caused Plaintiff to lose the value of its investment. Notably, Plaintiff never alleges any misrepresentation or omission by any individual defendant other than Jigar Patel. DE 73, ¶¶25-49.

## **ARGUMENT**

### A.    **Plaintiff Fails to State a Claim for Rescission**

As a direct result of the Court's ruling dismissing its Complaint based upon the specific non-reliance and waiver provisions of the SPAs under Delaware and New York law, Plaintiff now seeks to characterize its Amended Complaint as seeking only rescission, in order to avail itself of Florida law. But 2 3 Suited has <u>never</u> sought to rescind the SPAs, and it still seeks the same award

---

in support of its claim for rescission is a reference to the June 1, 2023 letter [DE 73-12] which is of no import, *see p. 7, infra.*, and term sheets predating the SPAs [DE 73-6, 73-8, 73-9]. That those terms sheets state the SPAs "will contain customary representations" does not alter the precise non-reliance provisions set forth in the later-signed SPAs, all of which contain merger clauses.

of monetary damages. 2 3 Suited <u>did not</u> disavow the SPAs, but instead affirmed them by suing for those same monetary damages. As such, 2 3 Suited cannot establish the absence of an adequate remedy at law. In truth, 2 3 Suited is simply unhappy with the remedies it knowingly agreed to in the SPAs, and now seeks to avoid them by belatedly inserting a specious claim for rescission, in an effort to avoid the effect of the non-reliance provisions under Florida law. But even if Florida law applied, Florida courts hold that a knowing waiver of a specific cause—such as 2 3 Suited's knowing waiver of all claims related to Devi's non-public financial information it knew the Sellers possessed, in connection with the stock purchase—will be enforced to prevent Plaintiffs' claims, just as the Court found it did under Delaware and New York law. *See* DE 72, pp. 24-30.

### 1. *Plaintiff Still Seeks the Same Monetary Damages*

In dismissing Plaintiff's Complaint, the Court addressed 2 3 Suited's argument that it was seeking to rescind the stock purchase transactions, and therefore the SPAs' choice-of-law provisions did not apply, making Florida law applicable. The Court found that "damages," and not "equitable rescission," was the "clear remedy" Plaintiff is seeking here. DE 72, p. 17. That is still true. Despite adding rescission as a claimed remedy in its fraud counts, and making a purported separate count for rescission, Plaintiff seeks the same relief in its Amended Complaint—monetary damages in the amount it paid for the Devi stock.[4] In its Complaint, 2 3 Suited alleged it "paid over $25 million" to purchase its shares of Devi stock, and that the stock was worth only "ten to fifteen cents on the dollar," resulting in a "loss of over $20 million." DE 1, p. 2. In its Amended Complaint, Plaintiff alleges it "paid over $25 million" to purchase the stock, contends that the

---

[4] Plaintiff seeks rescission as a remedy in the last paragraph of its Counts I through X for federal and Florida securities fraud, common law fraud and negligent misrepresentation. In each of those Counts, Plaintiff seeks rescission from the individual defendants as well as the Sellers. Because the individual Defendants *are not parties to* the SPAs, Plaintiff is not entitled to seek rescission of the SPAs against those Defendants. There is nothing to rescind.

stock is now "essentially worthless," and seeks to recover the $25 million it paid for the shares. DE 73, p. 2. By its own allegations, Plaintiff seeks the same damages it sought through its action at law that the Court dismissed. *See* DE 72. Merely changing the wording of its prayer for relief from damages to rescission does not establish a true claim for equitable rescission.

### 2.   *Plaintiff Failed to Disavow the SPAs and Waived any Claim for Rescission*

To seek rescission in Florida, a plaintiff must allege facts which show that upon discovery of the basis for rescission, the plaintiff, "with reasonable promptness, denied the contract as binding upon him and that thereafter he was consistent in his course of disavowal of it." *Rood Co. v. Bd. of Pub. Instruction*, 102 So. 2d 139, 141–42 (Fla. 1958) (citations omitted); *see also Gov't of Aruba v. Sanchez,* 216 F. Supp. 2d 1320, 1366 (S.D. Fla. 2002). No such facts are alleged here. The only allegation related to rescission—a reference to a June 1, 2023 letter asking for a refund of 2 3 Suited's investment—was only inserted into this case <u>after</u> this Court dismissed its Complaint. *See* DE 73 ¶53; DE 73-12. Plaintiff's original Complaint not only failed to seek rescission, but, as this Court has already determined, it <u>affirmed</u> the SPAs by seeking damages at law. *See* DE 72 p. 17 ("Thus, by pursuing damages as a remedy, Plaintiff has in fact 'ratifie[d] the contract,' including the choice-of-law provisions."). Moreover, Plaintiff admits that Defendants' alleged fraud began to "come to light" in October 2022, with the full extent known by March 2, 2023. DE 73, ¶¶50-51. Yet, 2 3 Suited did not take any action to disavow the SPAs until the June 2023 letter. Further, the June 2023 letter, even taken as true, <u>reaffirms rather than disavows</u> the SPAs. In that letter, 2 3 Suited reaffirmed it was still "considering all remedies," and expressly reserved "all rights or remedies **at law** or in equity" at that time. *See* DE 73-12.

If, after acquiring knowledge of an act warranting rescission, a plaintiff "either remains silent when he should speak or in any manner recognizes the contract as binding upon him, ratifies or

accepts the benefits thereof, he will be held to have waived his right to rescind. Thereafter, he will be bound by the contract in the same manner as if the mistake of fact had not occurred." *Rood Co.*, 102 So. 2d at 141–42 (citation omitted); *Gov't of Aruba,* 216 F. Supp. 2d at 1366. 2 3 Suited waived its right to seek rescission by failing to disavow the SPAs until it was forced to plead such claim in its Amended Complaint, as a result of the Court's dismissal. *Rood Co.*, 102 So. 2d at 141– 42; *see Barber v. Am.'s Wholesale Lender,* 542 F. App'x 832, 836 (11th Cir. 2013) (finding waiver of rescission claim and explaining that "mere filing of a complaint" is insufficient to constitute reasonably prompt notice); *Gov't of Aruba,* 216 F. Supp. 2d at 1366 (finding waiver of rescission claim where plaintiff failed to meet requisites to show entitlement to rescission and did not attempt to raise the issue until late in the litigation, and noting that even "slight circumstances indicating waiver will bar the relief.").

### 3. *Plaintiff Cannot Establish the Absence of an Adequate Remedy at Law*

In Florida, the actual absence of a remedy at law is a required element of a rescission claim. *See Cal. Inst. of Arts & Tech., Inc. v. Campus Mgmt. Corp.*, 2020 WL 1692079, at \*4 (S.D. Fla. Jan. 22, 2020) (citing *Anchor Bank, S.S.B. v. Conrardy*, 763 So. 2d 360, 361 (Fla. Dist. Ct. App. 1998)). However, a plaintiff whose claims for damages are barred or limited by a contract it willingly entered cannot establish the absence of an adequate remedy at law. In *Campus Mgmt. Corp.*, the parties entered into a master agreement for software and professional services. *Id.*, at \*4. The agreement contained a disclaimer of warranties and a limitation of liability clause limiting damages to the amounts paid under the parties' agreements. *Id.* On a summary judgment challenge to its rescission claim, the plaintiff contended it had no adequate remedy at law because the contract limited its claims and potential recovery. *Id.* at \*4. The court disagreed:

> Plaintiff argues that it does not have an adequate remedy at law because it has suffered damages in excess of what it could recover under the Master Agreement.

> Plaintiff, however, offers no authority in support of this argument. **Plaintiff knowingly entered into a contract that limited its damages. Plaintiff is now seeking a way around that limitation.** Further, Plaintiff concedes that the first time it raised rescission **was in the complaint**. Thus, even if Plaintiff could show that it does not have an adequate remedy at law, Plaintiff has not shown that it gave notice of its intent to rescind "with reasonable promptness"… Plaintiff did not request rescission until it filed its complaint approximately eighteen months later. Thus, Plaintiff waived its rights to rescission.

*Campus Mgmt. Corp.*, 2020 WL 1692079, at *4. (emphases added). Here, Plaintiff's Amended Complaint likewise seeks a way around the contracts it knowingly entered in which it agreed not to bring any claims based on the Sellers' possession and non-disclosure of material non-public information, which Plaintiff expressly acknowledged that the Sellers (and Plaintiff) had. The facts pled here, taken as true, invoke *Campus Mgmt. Corp.* Plaintiff 2 3 Suited entered into stock purchase agreements that <u>specifically prevented it</u> from raising "any claims" related to the Sellers' known possession of material non-public financial information about Devi. App. 211-12, 216-17, 227-28. Not only did 2 3 Suited <u>fail</u> to give notice of its intent to rescind with reasonable promptness, it <u>affirmed</u> the SPAs by suing for damages at law. *See* DE 1. Only <u>after</u> this Court dismissed its claims based on the contractual waivers did 2 3 Suited, for the first time, attempt to claim rescission for the sole purpose of "**seeking a way around**" the contractual limitations it agreed to. Plaintiff has an adequate remedy at law, it just doesn't like that it knowingly waived that claim in the SPAs. It cannot, by trying to recast its claims as something they are not, belatedly manufacture a claim for rescission when it has an adequate remedy at law it already attempted to pursue. *Campus Mgmt. Corp.*, 2020 WL 1692079, at *4.

## B. The Non-Reliance Provisions of the SPAs Bar Plaintiff's Claims under Delaware and New York Law

Plaintiff 2 3 Suited, a highly sophisticated and "accredited investor" represented by nationally recognized counsel, entered into four transactions to buy Devi stock, for which it signed written SPAs expressly acknowledging Plaintiff knew each Seller (and Plaintiff itself) "was privy to

material non-public information" about Devi <u>and</u> affirmatively representing that Plaintiff's decision to sign each SPA was being made "irrespective of whether such Non-Public Information has been provided to" Plaintiff. App. 211-12, 216-17, 227-28. In the SPAs Plaintiff also expressly and affirmatively "waive[d] **any claim,** or potential claim" it had or might have against each Seller "relating to [the Seller's] possession of Non-Public Information." *Id.* (emphasis added).

Based on the same facts pled in Plaintiff's original Complaint, this Court ruled that, under both Delaware and New York law the specific non-reliance and waiver provisions of the SPAs that this highly sophisticated party agreed to bar Plaintiff's fraud and misrepresentation-based claims. *See* DE 72, pp. 24-30, and cases cited therein. As this Court explained:

> whether Plaintiff styles its claim as one of fraudulent omission or misrepresentation ultimately does not matter… I find that the specific subset of representations made in each of the SPAs, especially Sections 2.3 and 3.1, demonstrate that Plaintiff could not have depended on nonpublic information outside the four corners of the contracts. Although those sections might not precisely acknowledge the exact facts Plaintiff *is* relying on, they establish the information that Plaintiff is *not* relying on. And that is enough. The SPAs are broad, yet specific enough to waive claims related to fraudulently withholding or misrepresenting unpaid tax liabilities, which is quintessential nonpublic information as defined by the agreements. That Plaintiff is now "disappointed with the written agreement," cannot result in it "escap[ing] through a wormhole into an alternative universe of extra-contractual omissions.[5]

Plaintiff ignores the Court's reasoning by pleading in the Amended Complaint the same underlying facts in purported support of its fraud claims, now "style[d]" as affirmative representations rather than omissions. But that change in terminology "does not matter." This case is still about Sellers not disclosing non-public information about alleged Devi tax liabilities and, in any event, "the distinction between a fraudulent representation versus omission is ultimately semantic; regardless of how Plaintiff characterizes the allegations in the Complaint, and regardless

---

[5] *Id.* at pp. 29-30 (citing *Prairie Capital III, L.P. v. Double E. Holding Corp.*, 132 A.3d 25, 52 (Del. Ch. 2015)). *Accord Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp.*, 343 F.3d 189, 192 (2d Cir. 2003).

of the precise language of the contract, relief in this case would be precluded as a matter of law."

DE 72, p. 26.

Plaintiff's claims remain based on the alleged failure of Jigar Patel to inform Plaintiff of Devi tax liabilities that Jigar Patel somehow knew about, but these omissions are now restyled as affirmative representations. For example, in the Complaint, Plaintiff alleged that a Devi Q3 Board Meeting PowerPoint dated Nov. 18, 2020 "failed to disclose" $8 million in tax liabilities…" DE 1, ¶24. In the Amended Complaint, Plaintiff alleges that the same Q3 Board Meeting PowerPoint "falsely stated" that the company had only $4 million in accrued liability and minimal taxes, when the Company really "had approximately $8 million in tax liabilities that were due and unpaid…" DE 73, ¶25. Changing the characterization <u>does not</u> change the alleged "fraud" on which Plaintiff relies: Devi had undisclosed tax liability.[6] Moreover, Plaintiff's attempt to avoid the choice of law provision in the SPAs by "restyling" this omissions case as one of affirmative misrepresentations is belied by its own allegations, which repeatedly state that Defendants <u>concealed</u> or <u>omitted</u> to

---

[6] All the alleged "fraudulent" acts on which Plaintiff relies remain unchanged from those pled in the original Complaint. *Compare* DE 1 ¶25 (alleging a December 1, 2020 Devi Compliance Certificate (this Certificate is actually dated December 31, 2021," not 2020, which is after Plaintiff's stock purchases)) "falsely certified" that all of Devi's outstanding taxes had been paid, when "in reality" Devi owed approximately $8 million in taxes) *with* DE 73 ¶25 (same); *compare* DE 1 ¶26 (alleging Jigar Patel, when asked, stated that "there were no problems" and "Devi's financials were healthy") *with* DE 73 ¶28 (same); *compare* DE 1 ¶32 (alleging Jigar Patel stated in a text to Tannenbaum that he did not think that "anything in accounting" was an issue) *with* DE 73 ¶36 (same); *compare* DE 1 ¶33 (alleging another Devi Compliance Certificate "falsely certif[ied] that all of Devi's taxes had been paid") *with* DE 73 ¶37 (same); *compare* DE 1 ¶34 (alleging a Devi Investor Presentation "valued Devi's shares at $1.50" and included a financial statement and valuation "but failed to disclose Devi's unpaid tax liabilities") *with* DE 73 ¶ 38 (same); *compare* DE 1 ¶35 (alleging Jigar Patel "reassured Mr. Tannenbaum that Devi's financials were sound") *with* DE 73 ¶39 (same); *compare* DE 1 ¶36 (alleging a Devi Company Operational Review Board presentation sent to Tannenbaum "included a financial statement and valuation of Devi that intentionally omitted" Devi's unpaid tax liability) *with* DE 73 ¶40 (alleging a Devi Company Operational Review Board presentation sent to Tannenbaum "included a financial statement and valuation of Devi that affirmatively misrepresented" Devi's unpaid tax liability) (emphases added); *see* DE 72 pp. 25-26.

inform 2 3 Suited of those tax liabilities.[7] Finally, this Court has already determined the Certificates of Compliance on which Plaintiff continues to rely "do not reveal any statements affirmatively made about the unpaid tax liability." DE 72, p. 26.[8]

It remains abundantly clear, as this Court found, that "all of Plaintiff's claims fundamentally rely on an allegation that, by omitting Devi's tax liabilities, Defendants created a fraudulent impression of Devi's financial situation." *Id.*, p. 26. Therefore, Plaintiff's act of calling the same alleged omissions affirmative misrepresentations does not warrant a different result. *Id.*, pp. 26-27 ("[R]egardless of how Plaintiff characterizes the allegations in the Complaint, and regardless of the precise language of the contract, relief in this case would be precluded as a matter of law… 'Every misrepresentation, to some extent, involves an omission of the truth…' Consequently, any misrepresentation can be re-framed for pleading purposes as an omission.") (citing *Prairie Capital*, 132 A.3d at 52).

## C.    The Non-Reliance Provisions of the SPAs also Bar Plaintiff's Claims under Florida Law

Even if Plaintiff was permitted to escape the legal impact of the choice-of-law provisions in the SPAs, which it negotiated and agreed to, and Florida law applied to the application of the SPA

---

[7] *See* ¶¶29 (Jigar Patel made "omissions regarding Devi's financial condition and unpaid tax liabilities"), 35 (Jigar Patel knowingly made multiple misrepresentations and fraudulent omissions…regarding Devi's unpaid tax liabilities"), 38 (an Investor Presentation "failed to disclose Devi's unpaid tax liabilities"), 44 (Jigar Patel took steps to "conceal Devi's unpaid tax liabilities" and "withheld" journal entries), 46 (Jigar Patel "failed to provide" information on Devi's finances), 47 (Jigar Patel "delayed audit and withheld information…to conceal the $13 million in unpaid tax liabilities"), 48 (Jigar Patel "concealed information"), 49 (Jigar Patel "concealed further management issues").

[8] Nor do the Certificates of Compliance (DE 73, ¶¶25, 37), Q3 Board Meeting PowerPoint Presentation (¶24), Investor Presentation (¶38), and Company Operational Review Board Presentation (¶40) contain any statements by Jigar Patel. These are all Devi corporate documents. As this Court previously held, the Amended Complaint remains <u>devoid</u> of any allegations that Jigar Patel affirmatively misrepresented that: "Yes, all the tax liabilities have been paid in full." DE 72, p. 25.

non-reliance, waiver, and merger provisions, the same result would ensue. In negotiating Section 3.1 of the SPAs, Plaintiff, a sophisticated investor represented by counsel who was himself in possession of material non-public information about Devi, acknowledged and agreed the Sellers were privy to certain financial information, defined as Non-Public Information, which "may be material to a reasonable investor." App. 211-12, 216-17, 227-28. Not only did Plaintiff acknowledge this non-public information would be material to a reasonable investor, Plaintiff further agreed that the information might even be material <u>to its specific decision to enter into the</u> <u>SPAs</u>. *Id.* Still, 2 3 Suited then affirmatively represented that it was signing the SPAs "irrespective" of the fact that such information was <u>not</u> being provided to it. *Id.* In addition, Plaintiff then expressly agreed to <u>waive</u> its right to raise "any claim, or potential claim" it might have against the Sellers related to their known possession of this particular information. *Id.* By the plain terms of Section 3.1 of the SPAs, Plaintiff was aware that Sellers could know about certain material Non-Public Information of Devi (including the alleged unpaid tax liabilities of Devi), and "acknowledged" that the Sellers may be misrepresenting or withholding information from 2 3 Suited, but 2 3 Suited was entering into the SPAs regardless of that potential fraud, and it waived all claims related thereto. *Id.*

Florida courts have expressly recognized that parties to a contract may, as was done here, acknowledge and agree that a contract may not be contested or otherwise rescinded on the basis of a specific knowing misrepresentation or omission. *See Oceanic Villas, Inc. v. Godson,* 4 So. 2d 689, 690–91 (Fla. 1941); *Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 84 (Fla. Dist. Ct. App. 2016). In the oft-cited *Oceanic Villas* case, the plaintiff sought to rescind a 99-year lease, alleging that the lessor procured the lease by fraudulent misrepresentations as to the gross earnings of the property. *Oceanic Villas,* 4 So. 2d at 690. The lease contained a general provision

in which the parties agreed that the lessor made "no verbal agreements, stipulations, *representations*, exceptions or conditions whatsoever…" other than those set forth in the agreement. *Id*. The Florida Supreme Court reversed the lower court's dismissal of the rescission claim because the waiver provision in the lease "did not stipulate that the lease may not be rescinded for fraud," but merely "evidenced an agreement that no fraud had been committed…", i.e., that the lessor had not made any misrepresentations. *Id.* at 690-91. The court, however, recognized that parties to a contract *can* make the contract incontestable on the ground of fraud by stipulations in the contract specifying what they were not relying on:

> We recognize the rule to be that fraud in the procurement of a contract is ground for rescission and cancellation of any contract *unless* for consideration or expediency ***the parties agree that the contract may not be cancelled or rescinded for such cause,*** and that ***by such special provisions of a contract it may be made incontestable on account of fraud, or for any other reason***…The clause of the contract here relied on does not stipulate that the lease may not be rescinded for fraud, but it does stipulate "and that no verbal agreements, stipulations, representations, exceptions or conditions whatsoever have been made or entered into in regard to the above described property which will in any way vary, contradict or impair the validity of this lease, or of any of the terms and conditions herein contained." This provision in the contract does not make the contract incontestable because of fraud, but evidences an agreement between the parties that no fraud had been committed. ***We think there is clearly a distinction in the effect of a stipulation of a contract which recognizes that fraud may have been committed and stipulates that such fraud, if found to have been committed, should not vitiate the contract***, and one in which the parties merely stipulate that no fraud has been committed and that neither party has relied upon the representations of the other party made prior to the execution of the contract.

*Id.* at 459 (emphasis added). Later decisions in both Florida and federal courts have also recognized this distinction, holding that while general merger or non-reliance provisions will not preclude a fraudulent inducement claim, the parties to a contract are not precluded from clearly and conspicuously disclaiming the right to base a claim on a specific known fraud or misrepresentation. *See Billington v. Ginn-La Pine Island, Ltd., LLP*, 192 So.2d 77, 84 (Fla. Dist. Ct. App. 2016) (affirming dismissal of fraud claims based on "clear and conspicuous" non-reliance provision

which acknowledged that misrepresentations may have been made, because a plaintiff "cannot recant his contractual promises that he did not rely upon extrinsic misrepresentations."); *cf. Lower Fees, Inc. v. Bankrate, Inc.,* 74 So.3d 517, 519-20 (Fla. Dist. Ct. App. 2011) (explaining that *Oceanic Villas* "interpreted the clause to be a 'stipulation' that no fraud had been committed and not a provision to make the contract incontestable because of fraud"); *Fong Kai Bus. Grp. Co. v. Shade Saver, Inc.*, 2019 WL 12304385, *5 (M.D. Fla. April 4, 2019) (noting that an explicit fraud waiver in a contact "will bar a suit for fraud."); *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1028 (11th Cir. 2017) (explaining that a mere "as is" clause cannot preclude a fraud claim, "unless the contract expressly states that it is incontestable on the ground of fraud.").

In the SPAs, 2 3 Suited and the Sellers clearly and conspicuously stipulated that the SPAs were incontestable on the basis of the fraud claimed here—the failure to disclose Devi's alleged undisclosed tax liability. Plaintiff and each Seller specifically agreed that the other had material non-public information that was not being disclosed to the other party, and both agreed that they were waiving and would not bring a fraud claim based on not being provided that non-public information. That is what Plaintiff claims here.

This Court has already carefully examined Section 3.1 of the SPAs, and found the provisions to be:

> about as definite as they can get: they state that Plaintiff knew Defendants might possess material, nonpublic information, that Plaintiff was entering the contract despite such unknown, nonpublic information, and that the Parties were waiving any claims with respect to that nonpublic, material information. It would be an exercise in mental gymnastics to buy Plaintiff's argument that these are statements regarding the Parties' mere possession and omission of nonpublic information and that these do not add up to anti-reliance provisions regarding the possession and omission of nonpublic information.

DE 72 pp. 23-24. The Court concluded that Section 3.1 of the SPAs is "specific enough **to waive claims related to fraudulently withholding or misrepresenting unpaid tax liabilities**, which is

quintessential nonpublic information as defined by the agreements." DE 72, p. 30 (emphasis added). So, this is not a situation where the Sellers merely stipulated that <u>no</u> misrepresentations were made or that they were disclosing all material information. *Cf. Oceanic Villas,* 4 So. 2d at 690-91; *Lower Fees,* 74 So.3d at 518; *Fong Kai Bus. Grp.*, 2019 WL 12304385, *1. To the contrary, Plaintiff and Sellers both stipulated that they knew the other party <u>did</u> have material inside information that was not being disclosed to the other party, and 2 3 Suited expressly <u>disclaimed</u> any reliance on that material information and <u>waived</u> any right to sue for any fraud based on that information. It is difficult to conceive of a more "clear and conspicuous" stipulation than Section 3.1, and permitting Plaintiff to avoid it would be a travesty of justice. *See* DE 72, p. 30 ("Plaintiff, as a sophisticated party who has affirmed the contents of the SPAs by suing for damages, is bound by its own representations within those contracts that it did not rely on any representations or agreements regarding nonpublic information outside the four corners of the SPAs.").[9]

### D. Plaintiff Cannot Establish Reliance as a Matter of Law

Even if this Court were to conclude that the clear and conspicuous stipulations and waiver in the SPAs do not bar Plaintiff's fraud claims, those provisions certainly prevent Plaintiff from establishing reliance as an element of its fraud claims. "[S]imply because [a plaintiff] is not

---

[9] *See also Billington,* 192 So.2d at 84. ("If these clauses are insufficient to render a claim for fraud "incontestable" within the contemplation of the *Oceanic Villas* court, then no disclaimer can possibly accomplish that objective—an objective that is both reasonable and essential in our complex and litigious society. Written contracts are intended to head-off disputes. Public policy strongly favors the enforcement of contracts…The law necessarily presumes that parties to a contract have read and understood its contents. Were we to reach a contrary holding, contracting parties would have no ability to protect themselves against those who would fabricate claims of fraud to avoid the consequences of a contractual obligation. On balance, the sanctity of a contract and predictability of an outcome in a dispute should take precedence where, as here, the parties clearly manifest the intent to avoid such claims.").

prohibited from bringing a fraud claim does not mean [it] can prove the elements of its fraud claim." *See Horizon Yachts, Inc*., 849 F.3d at 1028–29 (quoting *Beeper Vibes, Inc v. Simon Property Grp., Inc.,* 600 Fed. Appx. 314, 318-19 (6th Cir. 2014). Here, the SPAs present precise evidence of 2 3 Suited's actual knowledge that the Sellers had the information it now complains of—Devi's alleged undisclosed tax liability—and that Plaintiff <u>did not rely</u> on that undisclosed information in executing the SPAs. Even if not barred, Plaintiff cannot state claims for fraud or misrepresentation upon which relief may be granted because the element of reliance is blatantly missing, as shown in documents attached to its Amended Complaint. *See* DE 72-4, 72-10, 72-11.

### E.     The Fraud and Misrepresentation Allegations Fail for Lack of Particularity

Plaintiff's fraud claims all require, at a minimum, that a specific Defendant have made a misstatement or omission to Plaintiff in connection with the solicitation of stock purchases that caused Plaintiff to act.[10] Each element must be alleged with particularity. *See W. Coast Roofing & Waterproofing, Inc. v. Johns Manville*, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (fraud claims are subject to "a heightened standard of pleading with particularity…") (citation omitted).[11]

---

[10] *See, e.g., Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (§ 10(b) and Rule 10b–5 require that plaintiff plead and prove "(1) a <u>misstatement or omission</u>, (2) of a material fact, (3) <u>made with scienter</u>, (4) on which plaintiff relied, . . .") (citation omitted); *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011) (to state a claim under Fla. Stat. § 517.301 "a plaintiff must allege the following: (1) that <u>a defendant made</u> <u>a misstatement or omission</u> (2) of a material fact (3) with scienter . . .").

[11] The Private Securities Litigation Reform Act ("PSLRA"), Pub.L. No. 104–67, 109 Stat. 737 (1995) raised the standard for pleading scienter in securities fraud cases, mandating that the plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008); 15 U.S.C. § 78u–4(b)(2). It is established that § 10(b) and Rule 10b–5 require "a showing of either an 'intent to deceive, manipulate, or defraud,' or 'severe recklessness.' *Id.* (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 (11th Cir.1999). Plaintiff has failed to plead any facts which give a "strong inference" that any defendant acted with the requisite intent, and therefore the Complaint should be dismissed under 15 U.S.C. § 78u–4(b)(2).

Plaintiff fails to meet the pleading requirements to establish statutory or common law fraud or misrepresentation.[12]

### 1. Plaintiff's Failure to Plead that Defendants Dipak Patel, Jay Patel, and Uday Raval Ever Communicated with Plaintiff Precludes Its Claims Against Them

Plaintiff fails to allege even one communication between Dipak Patel, Jay Patel and Uday Raval and Plaintiff that could plausibly support a misrepresentation or omission claim under statutory or Florida common law. Plaintiff fails to allege that any individual Defendant other than Jigar Patel ever communicated with Tannenbaum or Plaintiff. DE 73 ¶¶23-29, 35-40. Accordingly, Counts I, II, V, VI, IX and X fail to state claims against these Defendants.

### 2. Plaintiff Fails to State Claims Based on Omissions

Likewise, Plaintiff fails to state a claim against Defendants Dipak Patel, Jay Patel, and Uday Raval based on omissions. Under Rule 10b-5, "[A] defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose." *Ziemba*, 256 F.3d at 1206 (quoting *Rudolph v. Arthur Andersen & Co.,* 800 F.2d 1040, 1043 (11th Cir.1986)). Because neither Dipak Patel, Jay Patel, nor Uday Raval are alleged to have ever communicated with Tannenbaum or Plaintiff, no duty to disclose information existed based on "defendant's *own* prior speech." *See, id.* Nor is there a fiduciary relationship or some other "special obligation" alleged, nor could there be. To the extent Counts I, II, V, and VI are based on alleged omissions, they fail to state claims against Dipak Patel, Pradip Patel, and Uday Raval.

A fraud claim based on omissions or fraudulent concealment under Florida law is an even narrower claim. "A defendant's knowing concealment or non-disclosure of a material fact may

---

[12] Plaintiff's failures to plead fraud with particularity remain as they were in its original Complaint. For more detail, Defendants respectfully direct the Court to the arguments in their original Motion to Dismiss. *See* DE 45, pp 24-36.

only support an action for fraud where there is a duty to disclose." *Young v. Cmty. Health Sys., Inc.*, 2023 WL 6121795, at *4 (11th Cir. Sept. 19, 2023) (quoting *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 538 (Fla. Dist. Ct. App. 2018)). "This duty arises when one party has information which the other party has a right to know <u>because there is a fiduciary or other relation of trust or confidence between the two parties</u>." *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003). No claim based on omissions under Florida law (Counts IX and X) is stated because there is no duty for one party to protect the other in a commercial transaction negotiated at arm's length. Thus Counts IX and X, to the extent they are based on omissions, fail to state claims against Defendants Dipak Patel, Jay Patel, Uday Raval, Weldon, Six Groove, Marvele, and Jigar Patel.

### 3. *Plaintiff Fails to Plead Sufficient Facts to Establish Agency*

While tenuously resting the majority of its claims on a purported agency relationship between Jigar Patel <u>and each of the Defendants</u>, Plaintiff fails to sufficiently plead agency as a matter of law. All of these allegations are general conclusory statements, and therefore fail to sufficiently plead agency.[13] *See* DE 73, ¶¶167-72. The Complaint is devoid of factual details, or any allegations that any Defendants acknowledged that the other Defendants would act on their behalf, or manifested any acceptance of that undertaking, or exerted control over the supposed "agent's" actions.[14] Where a plaintiff fails to plead allegations that plausibly establish an agency relationship

---

[13] To sufficiently establish an agency relationship based on actual authority, Plaintiff must plead: (1) acknowledgement by the principal that the agent will act for it; (2) the agent's manifestation of acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003) (citation omitted).

[14] The few conclusory sentences Plaintiff has added in Paragraph 22 of the Amended Complaint contain no facts which would establish that any of these Defendants exerted control over the others. For instance, the conclusory allegation that Dipak Patel and Uday Raval "controlled Jigar Patel by giving him Larry Patel's instructions" is nonsensical, and certainly does not establish agency under Florida law.

through actual or apparent authority, but instead relies on general conclusions, agency is insufficiently pleaded matter of law. *See McFee v. Carnival Corp.,* 2020 WL 13389096, at *7 (S.D. Fla. Apr. 22, 2020) (S.D. Fla. Apr. 22, 2020); *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1362 (S.D. Fla. 2022).[15]

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice and a final judgment entered awarding Defendants' costs and attorney's fees. Alternatively, any claims not dismissed with prejudice must be dismissed and Plaintiff must be compelled to plead claims in accordance with the Federal Rules of Civil Procedure and applicable law.

**VENABLE LLP**
*Attorneys for Defendants Jigarkumar Patel a/k/a Jigar Patel; Dipak Patel; Pradip Sanjay Patel a/k/a Jay Patel; Uday Raval; Marvele LLC; Six Groove LLC; and Weldon Development LLC*
801 Brickell Avenue, Suite 1500
Miami, FL 33131
Telephone: 305.349.2300

By: /s/ *W. Barry Blum*
    W. Barry Blum
    Florida Bar No. 379301
    bblum@venable.com
    Jonathan E. Perlman
    Florida Bar No. 773328
    jeperlman@venable.com
    Brett M. Halsey
    Florida Bar No. 0013141
    bmhalsey@venable.com

    -and-

---

[15] Plaintiff's claim for civil conspiracy fails because five of the nine Defendants did not own or sell *any* shares of Devi stock. This claim further fails because the Complaint does not allege facts that would establish a conspiracy, and for the reasons set forth in this Court's prior Order dismissing this count. DE 72, pp. 30-31.

**CLARK HILL**
Charles E. Murphy (Admitted *Pro Hac Vice*)
cmurphy@clarkhill.com
Robin S. Weiss (Admitted *Pro Hac Vice*)
rsweiss@clarkhill.com
220 Park Street, Suite 200
Birmingham, Michigan 48009
Tel: 248.988.5879

*Attorneys for Defendants Jigarkumar Patel, Dipak Patel, Pradip Sanjay Patel, Uday Raval, Marvele LLC, Six Groove LLC, and Weldon Development LLC*